FILED

PEARSON, J.

2011 SEP 30  PM 5: 06

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
YOUNGSTOWN

LOUISIANA MUNICIPAL POLICE            )      CASE NO. 1:10CV01461
EMPLOYEES RETIREMENT SYSTEM, *et*     )
*al.*,                                )
                                      )      JUDGE BENITA Y. PEARSON
             Plaintiffs,              )
                                      )
       v.                             )
                                      )
KPMG LLP, *et al.*,                   )      **MEMORANDUM OF ORDER AND**
                                      )      **OPINION** (Resolving ECF Nos. 38, 39,
             Defendants.              )      41, 42, 43)

Plaintiff Louisiana Municipal Police Employees Retirement System individually and

behalf of others who purchased publicly traded securities of Deibold Inc. filed a putative private

securities fraud class action against KPMG LLP ("KPMG"), Diebold Inc. ("Diebold"), Gregory

T. Geswein ("Geswein"), Kevin J. Krakora ("Krakora"), and Sandra K. Miller ("Miller") alleging

violations of (1) Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 and (2)

Section 20(a) of the Exchange Act of 1934.  ECF No. 35 (amended complaint).

Before the Court are Defendants' motions to dismiss Plaintiffs' amended class action

complaint, pursuant to Fed. R. Civ. P. 9(b) and 12(b)(6).  ECF Nos. 38, 39, 41, 42, 43.  In

response, Plaintiff filed an opposition (ECF Nos. 45, 46, 47), to which Defendants replied (ECF

Nos. 49, 50, 51, 52, 54).

For the reasons that follow, the Court denies Defendants KPMG, Diebold, Geswein,

Miller, and Krakora's motions to dismiss (ECF Nos. 38, 39, 41, 43, and 42).

(1:10CV01461)

## I. Background

The instant matter principally arises out of Defendants' alleged participation in a fraudulent scheme and wrongful course of business that "caused Diebold to falsify its financial records during the Class Period by, among other things, improperly recognizing revenue and manipulating the Company's recording of expenses" during the fiscal year 2003-2006 and the first quarter of 2007. ECF No. 35 at 3.

### A. The Parties

Lead Plaintiff, The Building Trades United Pension Trust Fund ( "The Fund"), is operated for the benefit of its participants and their families.[1] ECF No. 35 at 5. The Fund alleges that it purchased Diebold's publicly traded securities during the Class Period and was damaged thereby. ECF No. 35 at 5.

Diebold is an Ohio corporation headquartered in North Canton, Ohio, and is engaged primarily in the sale, manufacture, installation and service of ATMs, bank security systems and electronic voting machines. ECF No. 35 at 5. Diebold's business segments correspond with its primary sales channels: Diebold North America, Diebold International and Election Systems. Diebold North America sells financial and retail systems in the United States and Canada. ECF No. 35 at 5. Diebold International sells financial and retail systems throughout the remainder of the world. Diebold's Election Systems includes the operating results of Diebold Election Systems and its voting and lottery related business. ECF No. 35 at 5.

---

[1] Another unit of the Court, having considered the provisions of the Private Securities Litigation Reform Act of 1995, 15 U.S.C. §78u-4(a)(3)(B), appointed The Building Trades United Pension Trust Fund as Lead Plaintiff. ECF No. 33.

(1:10CV01461)

Defendant Geswein is a certified public accountant and was Diebold's Senior Vice President and Chief Financial Officer from 2000 until his resignation on August 8, 2005. As part of his duties, Geswein was responsible for and oversaw all aspects of Diebold's finance and accounting functions. ECF No. 35 at 6.

Defendant Krakora was Diebold's Executive Vice President and Corporate Controller from 2001 until August 12, 2005 and then Chief Financial Officer during the remainder of the Class Period. As part of his duties as Controller, Krakora reported directly to Defendant Geswein. Defendant Krakora is also a certified public accountant. ECF No. 35 at 6.

Defendant Miller was Diebold's Director of Corporate Accounting between 2002-2006. ECF No. 35 at 6. As part of her duties, Miller reported directly to Defendant Krakora. ECF No. 35 at 6.

Defendant KPMG LLP was Diebold's outside auditor before and during the Class Period. ECF No. 35 at 7. Diebold's audits were performed by accountant with KPMG's Cleveland, Ohio office. ECF No. 35 at 7.

### B. Historical Factual Background

In 2005, Plaintiffs, purchasers of publicly traded stocks of Diebold, filed a securities fraud class action against Diebold and individual Defendants, including Gregory Geswein and Kevin Krakora, alleging violations of Section 10(b) of the Securities and Exchange Act of 1934, Section 20(a) of the Securities Exchange Act of 1934, and Rule 10b–5. *In re Diebold Securities Litig.*, Case No. 5:05CV2873, 2008 WL 3927467 at *1 (N.D. Ohio Aug. 22, 2008). That court "determined that Plaintiffs [had] failed to properly allege scienter[,]" and dismissed the cause of

3

(1:10CV01461)

action. *Id.* at 4-5, 10. On appeal, the Sixth Circuit affirmed the judgment of the district court

and explained "that neither the complaint nor the proposed second amended complaint states

'with particularity facts giving rise to a strong inference that the defendant[s] acted with the

required state of mind.'" *Konkol v. Diebold, Inc.*, 590 F.3d 390, 405 (6th Cir. 2009).

In 2006, the Securities and Exchange Commission ("SEC") opened an informal

investigation into Diebold's revenue recognition practices, and subsequently filed a complaint

against Diebold in 2010. ECF No. 35 at 4. That same day, Diebold announced that the SEC

filed settlement materials to finalize Diebold's agreement to pay $25 million to resolve the

matter. ECF No. 35 at 4. Soon thereafter, the SEC filed a civil action against Defendants

Geswein, Krakora, and Miller for violations of the federal securities laws associated with their

falsification of Diebold's reported financial results, which is currently pending. ECF No. 35 at 4.

### C. Factual Background of the Instant Matter

The action before the Court involves allegations that Defendants fraudulently

manipulated Diebold's reported earnings and financial performance causing economic loss. ECF

No. 35 at 3-4. In its amended complaint, Plaintiff alleges that each defendant misled the

investing public by causing Diebold to include false and misleading FY03-FY06 and 1Q07

financial statements in public press releases and filings made with the SEC on Forms 10-K and

10-Q. ECF No. 35 at 7-8, ¶ 21. Plaintiff contends that Diebold's Forms filed with the SEC

represented that Diebold's financial statements were fairly stated in conformity with Generally

Accepted Accounting Principles ("GAAP"), which consists of those principles recognized by the

accounting profession as the conventions, rules, and procedures necessary to define accepted

4

(1:10CV01461)

accounting practice at the particular time. ECF No. 35 at 7-8, ¶ 21.

## II. Standard of Review

### A. Rule 12(b)(6) Standard

In deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must take all well-pleaded allegations in the complaint as true and construe those allegations in a light most favorable to the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted). A claim survives a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "While legal conclusions can provide the framework of a complaint, the[] [well-pleaded factual allegations] must be supported by factual allegations." *Iqbal*, 129 S.Ct. at 1950. A complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all of the complaint's allegations are true." *Twombly*, 550 U.S. at 555-56.

To determine whether a claim should proceed, the Supreme Court has set forth a legal "plausibility standard" to assess whether the facts convincingly suggest actionable conduct, rather than merely describing conduct that actually occurred. *Twombly*, 550 U.S. at 556 n.3. Applying this standard, district court judges should weigh the facts and determine, when necessary, whether they are sufficient to "nudge [the] claims across the line from conceivable to plausible" based on their "judicial experience and common sense." *Twombly*, 550 at 570; *Iqbal*, 129 S. Ct. at 1950. A suit may proceed as long as a plaintiff's complaint crosses that threshold. *Twombly*, 550 at 570.

5

(1:10CV01461)

### B. Rule 9(b) Standard

The particularity requirement of Fed. R. Civ. P. 9(b) is intended to be read in harmony with Fed. R. Civ. P. 8's "notice" pleading standard. *U.S. v. Ford Motor Co.*, 532 F.3d 496, 504 (6th Cir. 2008) (internal citations omitted).

Parties pleading fraud are obligated to place defendants on notice of the "precise misconduct" with which they are accused. *Id*. Under Fed. R. Civ. P. 9(b), a plaintiff's complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Indiana State Dist. Council of Laborers and Hod Carriers Pension Welfare Fund v. Omnicare, Inc.*, 583 F.3d 935, 943 (6th Cir. 2009) (internal citations omitted). Minimally, a plaintiff "must allege the time, place and contents of the misrepresentations upon which they relied." *Frank v. Dana Corp.*, 547 F.3d 564, 570 (6th Cir. 2008).

### III. Discussion

### A. Statute of Limitations

The applicable statute of limitations provides that a "private right of action" that, like the present action, "involves a claim of fraud, deceit, manipulation, or contrivance in contravention of a regulatory requirement concerning the securities laws . . . may be brought not later than the earlier of"–

"(1) 2 years after the discovery of the facts constituting the violation"; or

"(2) 5 years after such violation."

28 U.S.C. § 1658(b); *see Merck & Co. v. Reynolds*, 130 S.Ct. 1784, 1790 (2010).

(1:10CV01461)

### 1. 28 U.S.C. § 1658(b)(1)

As a matter of first impression, the U.S. Supreme Court construed section 1658(b)(1) of

the limitations statute and held that "a cause of action accrues (1) when the plaintiff did in fact

discover, or (2) when a reasonably diligent plaintiff would have discovered, 'the facts

constituting the violation'–whichever comes first." *Merck*, 130 S.Ct. at 1789-90.

#### i. Inquiry Notice and Storm Warnings

In determining the time at which "discovery" of those "facts" occurred, the U.S. Supreme

Court explained that terms such as "inquiry notice" and "storm warnings" may be useful to

"identify a time when the facts would have prompted a reasonably diligent plaintiff to begin

investigating." *Merck*, 130 S.Ct. at 1798. Storm warnings include "any indication[s] in . . .

[corporate] communications that could reasonably be considered contrary to the rosy predictions

that the Plaintiffs claim were misrepresentations." *Greenburg v. Hiner*, 359 F.Supp.2d 675, 683

(N.D. Ohio 2005) (internal citations omitted). The limitations period does not begin to run,

however, "until the plaintiff thereafter discovers or a reasonably diligent plaintiff would have

discovered 'the facts constituting the violation,' including scienter–irrespective of whether the

actual plaintiff undertook a reasonably diligent investigation." *Merck*, 130 S.Ct. at 1798.

#### ii. Scienter

The "facts constituting the violation" requires facts relating to scienter. *See Merck*, 130

S.Ct. at 1784. Scienter refers to "a mental state embracing intent to deceive, manipulate, or

defraud." *Tellabs Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319 (2007); *Ernst & Ernst*,

425 U.S. 185, 194, fn. 12 (1976). The U.S. Supreme Court has reserved the question of whether

7

(1:10CV01461)

reckless behavior is sufficient for civil liability Section 10(b) of the Securities Exchange Act of

1934 and Rule 10b-5. *Tellabs*, 551 U.S. at 319, fn. 3. Despite the Supreme Court's reservation,

"[e]very Court of Appeals that has considered the issue has held that a plaintiff may meet the

scienter requirement by showing that the defendant acted intentionally or recklessly, though the

Circuits differ on the degree of recklessness required." *Id.* The Sixth Circuit has defined the

degree of required recklessness as follows:

> Scienter may take the form of knowing and deliberate intent to manipulate,
> deceive, or defraud, and recklessness. Recklessness is defined as highly
> unreasonable conduct which is an extreme departure from the standards of
> ordinary care. While the danger need not be known, it must at least be so obvious
> that any reasonable man would have known of it.

*Frank v. Dana Corp.*, 646 F.3d 954, 959 (6th Cir. 2011) (internal citations and quotations

omitted).

In the instant matter, the critical date for timeliness purposes is June 30, 2008–two years

before the complaint was filed. ECF No. 1. Defendants Diebold and Miller argue that Plaintiff

was put on inquiry notice no later than July 25, 2007, and Plaintiff should have, therefore,

discovered the "facts constituting the violation" well before June 30, 2008. ECF Nos. 39-1 at 29;

42-1 at 18. Defendants point to several public record "warnings" as pleaded in the complaint.[2]

---

[2] In support of Defendants' position that Plaintiff should have discovered "the facts
constituting the violation," Defendants highlight the following allegations addressed in the
complaint: (1) Diebold had reported a material weakness in its revenue recognition practice
(ECF No. 35 at 39-41, ¶ 108); (2) *In re Diebold Securities Litigation* case; (3) Diebold was the
subject of an ongoing SEC investigation (ECF No. 35 at 4, ¶ 6); (3) Michael R. Moore had
stepped down as a principal account officer of the Company (ECF No. 35 at 46, ¶ 125); and, (4)
Diebold delayed the release of its second-quarter 2007 financial results (ECF No. 35 at 47, ¶
126). ECF Nos. 39-1 at 29; 42-1 at 18.

(1:10CV01461)

ECF Nos. 39-1 at 29; 42-1 at 18. In reply, Plaintiff argues that Defendants have not and cannot

shown facts critical to revealing scienter were known to, or even discoverable by plaintiff, or any

reasonably diligent plaintiff, before June 2010. ECF No. 45 at 14. In response, with respect to

scienter, Defendant Diebold claims that Plaintiff's opposition that no facts showing Defendants'

scienter were available to, nor a reasonably discoverable by, plaintiff or any reasonably diligent

plaintiff, before June 2010 is "belied by Plaintiff's own allegations." ECF No. 52 at 17. That is,

those allegations, as cited by Diebold, where Plaintiff used the word "scienter." ECF No. 52 at

17-18.

In accordance with the recent U.S. Supreme Court ruling, the Court finds that none of the

circumstances cited by Defendants reveal "facts" indicating scienter. In *Merck*, Petitioner Merck

relied upon (1) the FDA's September 2001 warning letter, which stated that Merck "minimized"

the VIGOR study's "potentially serious cardiovascular findings, and (2) pleadings filed in a

previous products-liability action alleging that Merck has "omitted, suppressed, or concealed

material facts" and "purposefully downplayed and/or understated the serious nature of the risks

associated with Vioxx." *Merck*, 130 S.Ct. at 1799. The U.S. Supreme Court explained that the

FDA's warning letter described the pro-Vioxx naproxen hypothesis as a "possible explanation"

"shows little or nothing about scienter; that is, whether Merck advanced the naproxen hypothesis

with fraudulent intent." *Id*. Regarding the pleadings filed in a prior products-liability lawsuit,

the U.S. Supreme Court explained that the facts failed to reveal scienter when, "without

providing any reason to believe that the plaintiffs had special access to information about

Merck's state of mind, the complaints alleged only in general terms that Merck had concealed

9

(1:10CV01461)

information . . ." *Id*. Similarly, in the instant matter, the public record and prior lawsuit do not reveal facts of a knowing and deliberate intent to manipulate, deceive, or defraud, and recklessness, *i.e.* scienter. The Court finds, therefore, that Plaintiff's claims are not time barred under 28 U.S.C. § 1658(b)(1).

### 2. 28 U.S.C. § 1658(b)(2)

The five-year period operates as a statute of repose and is "an unqualified bar on actions instituted '5 years after such violation' . . . giving defendants a total repose after five years." *Merck*, 130 S.Ct. at 1797. The five-year statute of repose begins to run on the date alleged as to each violation and is not subject to equitable tolling. *Id*. Defendants argue that by the time Plaintiff filed its complaint, the five-year statutory period in 28 U.S.C. § 1658(b)(2) had run. Here, the critical date for timeliness purposes is June 30, 2005–five years before the original complaint was filed. ECF No. 1. The Court finds that Plaintiff's claims which arose before June 30, 2005 are outside the repose period and are not actionable.

### 3. Certain of Plaintiff's Allegations Against Defendants are Time Barred

Certain of Plaintiff's claims against Defendants are barred by the five-year statute of repose. ECF No. 50 at 5. In particular, none of the five alleged acts of misconduct concerning referenced in ¶ 32, 35-37, 45, 59, and 67 are alleged to have happened after 2004. *See e.g.* ECF No. 50 at 5.

All allegations that a defendant participated in the alleged fraud that precede June 30,

10

(1:10CV01461)

2005 are barred by the five-year statute of repose.[3] *See* <u>ECF No. 35 at 10-12, 13, 17, ¶¶ 32, 35-37, 45, 59, 67</u>. Plaintiff must amend its complaint to remove those allegations.

### B. Pleading Fraud with Particularity: Rule 9(b) and PSLRA's Particularity Requirements

It is well settled that allegations of fraud must be pled with particularity. Fed. R. Civ. P. 9(b). Defendant's motions are replete with concern that Plaintiff's allegations have failed to place Defendants on notice of the "precise misconduct" with which the defendant is accused. *See* <u>U.S. v. Ford Motor Co., 532 F.3d 496, 504 (6th Cir. 2008)</u> ("So long as a [plaintiff] pleads sufficient detail–in terms of time, place and content, the nature of a defendant's fraudulent scheme, and the injury resulting from the fraud–to allow the defendant to prepare a responsive pleading, the requirements of Rule 9(b) will generally be met.").

Courts have freely dismissed complaints when plaintiffs have failed to allege fraud with sufficient particularity, by, for example, asserting "mere conclusory allegations to the effect that defendant's conduct was fraudulent or in violation of Rule 10b-5," or that the defendant's representations were "'false, misleading, and inflated picture of assets, earning, and business' without sufficient explanation about how or why such representations were false." *Gupta v. Terra Nitrogen Corp.*, 10 F.Supp.2d 879, 883 (N.D. Ohio 1998). Despite the concerns raised, the Court finds the allegations meet, albeit barely at times, the minimum threshold of the particularity requirement.

---

[3] The five year statute of repose bars Plaintiffs' Rule 10b-5 and Rule 20(a) allegations prior to June 30, 2005. *See* <u>In re Keithley Instruments, Inc., v. Derivative Litig.</u>, 599 F.Supp.2d 875, 902, fn. 22 (N.D. Ohio 2008).

(1:10CV01461)

Defendants also challenge the particularity of the alleged financial misstatements and

omissions. ECF Nos. 39-1 at 32-33; 41-1 at 5-7; 43-1 at 18-23. The Court summarily finds that

Plaintiff pleaded sufficient detail–in terms of time, place and content, the nature of Defendants'

fraudulent scheme, and the injury resulting from the fraud–allowing Defendants to prepare a

responsive pleading. Fed. R. Civ. P. 9(b) and the PSLRA's requirements, therefore, have

generally be met. *See* ECF No. 35 ¶¶ 71-72, 74-79, 80-83, 85-87, 89-92, 94-99, 101-103,

105-108, 110-113, 115-118, 120-123, 126-127, 129-131, 132-134; *see also Frank*, 547 F.3d at

570.

### C. Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5

Section 10(b) of the Securities Exchange Act and Rule 10b-5 promulgated thereunder

prohibit "fraudulent, material misstatements or omissions in connection with the sale or purchase

of a security." *Frank*, 547 F.3d at 569 (internal citation omitted). To prevail on their claim that

Defendants made material misrepresentations or omissions in violation of Section 10(b) and Rule

10b-5, Plaintiff must prove: "(1) a material misrepresentation or omission by the defendant; (2)

scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of

a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss

causation." *Matrixx Initiatives, Inc. v. Siracusano*, __ U.S. ___, 131 S.Ct. 1309, 1317 (2011)

(internal citation omitted); *see also Frank*, 547 F.3d at 569.

In addition to the particularity pleading requirements of Fed. R. Civ. P. 9(b), described

above, the Private Securities Litigation Reform Act of 1995 ("PSLRA") imposes additional and

more "[e]xacting pleading requirements" for pleading scienter in a securities fraud case. *Tellabs*,

12

(1:10CV01461)

551 U.S. at 313. Under the PSLRA's heightened pleading requirements, any private securities

complaint alleging that the defendant made a false or misleading statement must:

> (1) [S]pecify each statement alleged to have been misleading, the reason or
> reasons why the statement is misleading, and, if an allegation regarding the
> statement or omission is made on information and belief, the complaint shall state
> with particularity all facts on which that belief is formed [and]

> (2) [S]tate with particularity facts giving rise to a strong inference that the
> defendant acted with the required state of mind.

15 U.S.C. § 78u–4(b)(1), (2); *see also Louisiana School Employees' Retirement System v. Ernst*

*& Young, LLP*, 622 F.3d 471, 478 (6th Cir. 2010). Regarding the scienter requirement, the

PSLRA requires that "plaintiffs must 'state with particularity facts giving rise to a strong

inference that the defendant acted with the required state of mind." *Frank*, 646 F.3d at 958

(internal citations and quotations omitted).

Defendants contend, although pleaded individually, that Plaintiff has failed to plead the

elements of scienter and loss causation. ECF Nos. 38, 39, 41, 42, 43. Below, the Court

addresses Defendants' varied arguments as to each element.

### 1. Scienter

Defendants KPMG, Geswein, and Krakora argue that Plaintiff failed to allege facts

plausibly suggesting that KPMG and Geswein acted with the required level of scienter. ECF

Nos. 38, 41, 43.

"To establish liability under § 10(b) and Rule 10b-5, a private plaintiff must prove that

the defendant acted with scienter, a mental state embracing intent to deceive, manipulate, or

defraud." *Tellabs*, 551 U.S. at 319 (internal citations and quotations omitted); *see also PR*

13

(1:10CV01461)

*Diamonds*, 364 F.3d at 681. "Scienter may take the form of 'knowing and deliberate intent to manipulate, deceive, or defraud, and recklessness." *Frank*, 646 F.3d at 959 (internal citations omitted). The Sixth Circuit has defined recklessness as "highly unreasonable conduct which is an extreme departure from the standards of ordinary care" and "akin to conscious disregard." *Id.* (internal citations and quotations omitted).

A plaintiff adequately pleads scienter under PSLRA "only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Matrixx*, ___ U.S. ___, 131 S.Ct. at 1324 (quoting *Tellabs*, 551 U.S. at 323-24 ("To determine whether the plaintiff has alleged facts that give rise to the requisite 'strong inference' of scienter, a court must consider plausible nonculpable explanations for the defendant's conduct, as well as inferences favoring the plaintiff.")). In making this determination, the U.S. Supreme Court held that courts must review "all the allegations holistically."[4] *Matrixx*, ___ U.S. ___, 131 S.Ct. at 1324 (quoting *Tellabs*, 551 U.S. at 322-23 ("The inquiry . . . is whether all of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard.")).

### i. Defendants Geswein, Krakora, and Miller

Geswein argues that Plaintiff's allegations that he revealed some, but not all, of Diebold's

---

[4] The Sixth Circuit addressed that "[i]n the past, we have conducted our scienter analysis in section 10(b) cases by sorting through each allegation individually before concluding with a collective approach . . . . However, we decline to follow that approach in light of the Supreme Court's recent decision in *Matrixx Initiatives, Inc. v. Siracusano* . . . ." *Frank*, 646 F.3d at 961.

14

(1:10CV01461)

previous false statements immediately before he resigned is too "irrational" to contribute to a strong inference of scienter. ECF No. 41-1 at 8. When competing inferences are considered, Geswein argues that the more compelling inference is that he lacked fraudulent intent because it is irrational to disclose half-truths, for no gain, at a company in which he was on the brink of having no role. ECF Nos. 41-1 at 8-9; 51 at 5-7. Krakora argues, in a footnote, that "neither restatements nor GAAP violations are sufficient to establish a strong inference of fraudulent intent, which is the required state of mind under the PLSRA." ECF No. 43-1 at 19.

In response, Plaintiff initially and summarily argues that it has alleged facts giving rise to the requisite "strong inference" of scienter as to each Defendants' participation in improper accounting, and these allegations sufficiently support the inference that Defendants knew, or at the very least were reckless in ignoring, the inaccuracy of Diebold's Class Period financial statements. ECF No. 46 at 21-32. Plaintiff then argues that Geswein's attempt to explain his resignation as innocuous is presumptive and ignores the detailed allegations of his wrongful conduct, which are presumed as true. ECF No. 46 at 33. Plaintiff correctly points out that the alleged claims do not require motive.[5] ECF No. 46 at 33. In response to Krakora, Plaintiff contends that the GAAP violations are not pleaded alone, rather they are pleaded beside numerous additional indicia to cumulatively raise a strong inference of scienter. ECF No. 46 at 32-33.

In reply, Krakora elaborates on his initial argument by mirroring Geswein's argument.

---

[5] *See Matrixx*, ___ U.S. ___, 131 S.Ct. at 1324 ("The absence of a motive allegation, although relevant, is not dispositive.").

15

(1:10CV01461)

Krakora contends that Plaintiff's allegations relating to an inference of scienter are not "cogent"

factual inferences because it is unlikely that Defendants "would knowingly pursue a flagrantly

GAAP-violative bill and hold revenue recognition policy where auditors, who are experts in

GAAP, were known to be specifically testing the execution of the policy." ECF No. 54 at 18.

Krakora further argues that Plaintiff failed to allege "coherent facts concerning a compelling

personal motive . . . ." ECF No. 54 at 18. Geswein's reply reiterates his argument described

above. ECF No. 51.

    The inference that Geswein and Krakora, as top executives who oversaw all aspects of the

Company's finance and accounting functions, recklessly or intentionally participated in false and

misleading reported earnings and financial performance is at least as compelling, if not more

compelling, than the inferences regarding rationality, the likeliness that a corporate officer would

engage in fraud when auditors are testing the Company's revenue recognition policy, motive, and

misapplication of case law. According to the amended complaint, Plaintiff alleges that Geswein

and Krakora orchestrated financial manipulations that were designed, and did, misstate Diebold's

financial results; and, possessed actual knowledge or acted in reckless disregard of the truth or

falsity of those statements.[6] ECF No. 35. Most importantly, Defendants issued press releases

that were false and misleading when made and failed to disclose material facts concerning

---

    [6] On August 8, 2005, Geswein resigned from Diebold. ECF No. 35 at 23, ¶ 75. In accordance with 28 U.S.C. § 1658(b)(2), the following four allegations against Geswein are within the statute of repose: (1) a June 30, 2005 press release (ECF No. 35 at 21, ¶¶ 71-73); (2) a July 27, 2005 press release (ECF No. 35 at 22-23, ¶¶ 74, 77); (3) an August 12, 2005 Form 10-K/A (ECF No. 35 at 26, ¶ 80); and, (4) an August 12, 2005 Form 10-Q/A (ECF No. 35 at 28, ¶¶ 81-82).

(1:10CV01461)

Diebold's financial results and business practices. ECF No. 35 at 21-58; *see Matrixx*, ___ U.S.

___, 131 S.Ct. at 1324, fn. 15 ("[T]he misleading nature of Matrixx's press release is sufficient to

render the inference of scienter at least as compelling as the inference suggest by *amicus*.").

Miller contends that Plaintiff only alleges that Miller: (1) helped draft certain forms that

were allegedly used by others as part of a fraudulent scheme; and (2) made some inaccurate

accounting entries at the direction of her superiors. ECF No. 42-1 at 24. Miller further argues

that those allegations draw "some" inference of scienter, but ultimately fail to establish a

"strong" inference that Miller acted at least recklessly. The inference that Miller, as Director of

Corporate Accounting, participated in the issuance of and caused to be disseminated false and

misleading statements and possibly failed to disclose material facts about the Company's

accounting practices by, for example, consciously rounding numbers that reduced reported

expenses and increased reported earnings is at least as compelling, if not more compelling, than

the inference that scienter is not "strong" (ECF No. 42-1 at 24) or "plausible" (ECF No. 50 at

12).

These allegations, "taken collectively," give rise to a "cogent and compelling" inference

that Geswein, Krakora and Miller acted with deliberate recklessness by participating in the

formulation and dissemination of the Company's inaccurate financial statements. Plaintiff has

adequately pleaded the required inference of scienter as to Geswein, Miller and Krakora when

collectively viewing the allegations. It still remains for Plaintiff to fully establish scienter.

### ii. Defendant KPMG

The element of scienter has an even higher pleading standard when the allegation is

17

(1:10CV01461)

against an independent outside auditor, rather than the company that allegedly committed the

fraud.  When attempting to establish scienter on the part of an auditor through recklessness, a

pleading must establish a state of mind "so culpable that it approximate[s] an actual intent to aid

in the fraud being perpetrated by the audited company."  *PR Diamonds, Inc.,* 364 F.3d at 693.

The Sixth Circuit further defined the standard by explaining the following:

> Scienter requires more that a misapplication of accounting principles. The
> [plaintiff] must prove that the accounting practices were so deficient that the audit
> amounted to no audit at all, or an egregious refusal to see the obvious, or to
> investigate the doubtful, or that the accounting judgments which were made were
> such that no reasonable accountant would have made the same decisions if
> confronted with the same facts.

*Id.* at 693-94 (quotation marks and citations omitted).  The facts alleging scienter on the part of

an accountant must clearly show that the accountant was either aiding in the fraud or so

egregiously irresponsible that no other accountant would have acted in the same manner.  *Id.*

KPMG argues that its testing of bill and hold transactions, identification of issues, and

notification of management concerning those issues cannot support an inference of scienter.

ECF No. 38 at 13.  KPMG contends that its responsibility, as an auditor, is only to express a

professional opinion as to whether the audited financial statements are presented fairly in

accordance with GAAP, and conformity with GAAP does not guarantee that financial statements

are accurate in every respect.  ECF No. 38 at 5,7.  KPMG asserts that the facts do not show that

the accounting practices were so deficient that the audit amounted to no audit at all or reflected

an egregious refusal to see the obvious because KPMG, by Plaintiff's own admission, "did

perform audit procedures, did test a sample of bill and hold transactions, did determine that

Diebold had prematurely recognized revenue on certain transactions, did notify management of

18

(1:10CV01461)

the issue, and did see management respond by establishing a multi-million dollar reserve to address the issue." ECF Nos. 38 at 11; 35 at 10, ¶ 31. KPMG, therefore, claims that the public records and announcements suggesting business misconduct (*i.e.*, red flags) do not show scienter because KPMG was exercising its judgment and performing its audit function in good faith–with the result that a problem was uncovered and then disclosed, in detail, to the public through a public securities filing by Diebold management. ECF No. 38 at 13.

In response, Plaintiff alleges that KPMG knew or was reckless in not knowing that its audit reports were materially false and misleading, and the complaint identifies specific, highly suspicious facts and circumstances that were available to KPMG and ignored at the time of the audit. ECF No. 47 at 10. Plaintiff also argues that KPMG disregarded numerous red flags that should have triggered a higher degree of scrutiny and that collectively these red flags support a strong inference of scienter. That is, KPMG's "willful blindness" toward the red flags consist of an egregious refusal to see the obvious and investigate the doubtful. ECF No. 47 at 10. Plaintiff alleges that KPMG should have been placed on notice by red flags that included: (1) Diebold's material internal control weakness issued on March 14, 2006; (2) Statement on Auditing Standards No. 99 specifically identifying internal control deficiencies as a risk factor of accounting misstatements arising from fraudulent financial reporting; (3) Accounting errors admitted in the restatement; (4) Diebold's public announcements regarding investigations into the accuracy of its financial statements; and, (5) Audit Risk Alters issued by the American Institute of Certified Public Accountants. ECF No. 35 at 82-87. Plaintiff alleges that in light of the nature and pervasiveness of the revenue recognition and other accounting errors admitted in

19

(1:10CV01461)

the restatement and the various other red flags, any auditor that was not acting recklessly would have discovered that Diebold's financial statements were materially misstated. ECF No. 35 at 87. Plaintiff's claim that regardless of the numerous red flags, KPMG allowed investors to continue to rely upon its unqualified audit reports that included blatantly inappropriate revenue recognition and earning management. ECF Nos. 47 at 12. Accordingly, KPMG's failure to act on such audaciously simple violations suggests that it either knew of, or willfully turned a blind eye to, the fraud at the Company. ECF No. 47 at 13.

In reply, KPMG emphasized that the complaint cannot give rise to a plausible inference of scienter on the part of KPMG because, according to those very allegations, KPMG unquestionably did perform an audit with meaningful audit procedures that identified problems with Diebold's accounting, to which Diebold's management responded. ECF No. 49 at 2.

The inference that KPMG failed to investigate and issued unqualified audit reports certifying that the Company's statements were accurate and GAAP compliant while accounting violations were in plain view is at least as compelling, if not more compelling, than the inference that KPMG did not act reckless because it performed an audit, identified accounting problems, and exercised its own judgment. According to the complaint, KPMG did recognize revenue inconsistent with the Company policy. ECF No. 35 at 10. Most significantly, however, the complaint also alleges, in specific detail, various red flags that put KPMG on notice of additional financial improprieties. These allegations, "taken collectively," give rise to a "cogent and compelling" inference that KPMG acted with deliberate recklessness by failing to investigate the doubtful and issuing unqualified audit reports. Upon accepting the factual allegations as true and

20

(1:10CV01461)

viewing those allegations holistically, "a reasonable person" would deem the inference that

KPMG acted with deliberate recklessness (or even an egregious refusal to see the obvious or to

investigate the doubtful) "at least as compelling as any opposing inference on could draw from

the facts alleged." *Matrixx*, ___ U.S. ___, 131 S.Ct. at 1324 (quoting *Tellabs*, 551 U.S. at 323-

24). Plaintiff has adequately pleaded scienter; however, whether Plaintiff can prove its

allegations and establish scienter is an entirely different question.

### 2. Loss Causation

"Loss causation requires a causal connection between the material misrepresentation and

the loss." *Dura Pharmaceutical, Inc. v. Broudo*, 544 U.S. 336, 342 (2005). The plaintiff bears

"'the burden of proving' that the defendant's misrepresentations 'caused the loss for which the

plaintiff seeks to recover.'" *Id.* at 345-46; *see* 15 U.S.C. §§ 78u-4(b)(1), (2).

Defendants Diebold, Geswein, Miller, and Krakora argue that Plaintiff has not pleaded

loss causation as to the alleged misstatements within the repose period. ECF Nos. 39, 41, 42,

43. Defendants' arguments that Plaintiff failed to adequately allege loss causation, gleaned from

their individual briefs, include: (1) fraud-on-the market doctrine[7] and (2) none of the alleged

statements caused Plaintiff a loss. ECF Nos. 39-1 at 15-25; 41-1 at 11-16; 42-1 at 27-28; 43-1 at

16-18. Under the fraud-on-the-market doctrine, when a company's stock trades in an efficient

---

[7] The fraud-on-the-market doctrine is fundamental to class-action litigation under § 10(b) and Rule 10b-5. A plaintiff's ability to bring a securities-fraud claim on a class basis is grounded on the presumption of reliance the fraud-on-the-market doctrine affords. Without the fraud-on-the-market doctrine, each putative class member would have to prove actual, eyes-on reliance on the alleged misstatement, which would prevent class treatment because individual issues about what each class member knew and relied upon would overwhelm common issues. *Basic Inc. v. Levinson*, 485 U.S. 224, 241-242, 246 (1988).

21

(1:10CV01461)

market, all public information about the company is reflected in the company's stock price. ECF Nos. 39-1 at 19; 41-1 at 11-13; 42-1 at 27-28; 43-1 at 16-17. Defendants explain that the complaint is premised on the republication of the allegedly erroneous financial statements, and the new, current information is outside the statute of repose. ECF Nos. 39-1 at 19; 41-1 at 11-13; 42-1 at 27-28; 43-1 at 16-17. Because republication of already-released information does not tell the market anything it does not already know, the republication will not affect the stock price and it is logically impossible to establish loss causation for that republication where an efficient market is alleged. ECF Nos. 39-1 at 19; 41-1 at 11-13; 42-1 at 27-28; 43-1 at 16-17. Defendants further argue that the only alleged misstatements occurring within the repose period were revised up, not down. ECF Nos. 39-1 at 23-25; 41-1 at 13-16; 42-1 at 27-28; 43-1 at 17-18. Defendants contend Plaintiff cannot plausibly allege that Diebold's stock price was inflated by understatements of its results; and, therefore the complaint does not show loss causation for the only alleged misstatements originally issued within the repose period. ECF Nos. 39-1 at 23-25; 41-1 at 13-16; 42-1 at 27-28; 43-1 at 17-18.

Plaintiff responds that the complaint unequivocally satisfies the loss causation pleading requirements by alleging a causal connection between its losses and Defendants' false statements and omissions; and that Defendants made new false statements and omissions during the repose period that caused the class's loss. Plaintiff alleges that it satisfied the *Dura* standard by pleading Diebold's stock price was artificially inflated and then dropped during the Class Period when: (1) Defendants' earnings management activities, which falsified Diebold's financial statements and misled investors about future earnings expectations; (2) Defendants' misrepresentations

22

(1:10CV01461)

concerning the effectiveness of the Company's internal financial controls to detect and prevent

the wrongful conduct alleged; and, (3) Defendants' misrepresentations concerning their

compliance with GAAP, were disclosed.[8] ECF No. 45 at 27-28.

---

[8] Specifically, the Plaintiff highlights the following allegations evidencing that the complaint satisfies the loss causation pleading requirements:

> (1) defendants failed to disclose as part of Diebold's 2005 restatement that the earnings management conduct misstated the revenue and earnings the Company reported, and for this additional reason, the prior financial results were misstated and should have also been restated; that this conduct was continuing to misstate the amount of revenues actually earned by the Company; that this conduct rendered unreliable the earnings guidance the Company gave; defendants failed to disclose that the Company's internal financial controls were not effective and did not operate to detect and prevent the alleged misconduct; defendants falsely assured investors that the financial statements issued, including the restated financials, complied with GAAP (¶¶71-135, 141-201); (2) defendants' false statements and omissions caused the Company's stock to trade at artificially inflated levels throughout the Class Period (¶¶73, 84, 93,100, 104, 109, 114, 119, 124, 128, 131, 205, 221); (3) plaintiff purchased Diebold stock at artificially inflated prices (¶¶12, 205, 221); (4) on July 25, 2007 when Diebold announced that it was delaying the release of its 2Q07 financial results due to questions over the Company's recognition of "bill and hold" revenue, Diebold's stock dropped nearly $4.00 per share as the market absorbed this news (¶¶126-128); (5) on October 2, 2007 when Diebold announced that it was discontinuing its use of "bill and hold" revenue recognition practices and that it may have to revise the "timing" of revenue recognized in 2006, Diebold's stock dropped another $1.57 per share (¶¶129-131); (6) Diebold's stock price also declined $3.06, on very heavy volumes between December 19-21, 2007, as the market learned that the DOJ was conducting a parallel investigation into the Company's accounting practices (¶¶132-133); (7) on January 15, 2008 when Diebold announced that its previously issued financial results for FY 2003-2006 and quarterly results issued during FY 2005-2006 and 1Q07 should no longer be relied upon and would be restated, Diebold's stock price again fell in response and closed at $20.40 lower than on June 30, 2005, the day the Class Period started (¶¶134-135); and (8) plaintiff and the Class suffered damages as a direct result of this sequence of events (¶¶126-135, 205-208).

ECF No. 45 at 28-29.

23

(1:10CV01461)

Plaintiff further argues all of the omissions and misrepresentations alleged were first made during the Class Period and provide a proper basis for Plaintiff's claim of loss. ECF No. 45 at 29. For example, on July 27, 2005 when Defendants announced that the Company's financial statements were being restated, Plaintiff alleges that Defendants omitted to inform investors that Diebold's financial results were materially misstated in other respects due to the continuing earnings management conduct defendants engaged in, and that the restated financials did not comply with GAAP as a result. ECF Nos. 45 at 29; 35 at 7-20, 22-23, ¶¶ 21-67, 74, 76-77, 141-187. Plaintiff contends that because Defendants first announced the need to restate the financials during the Class Period, this omission could not have been "made" prior to June 30, 2005. ECF No. 45 at 29-30. Plaintiff alleges that these omissions and misrepresentations were corrected in a series of disclosures beginning on July 25, 2007. ECF No. 45 at 29-30. Thus, they remained alive in the market, and part of the "total mix of information" from the point they were "made" until this correction occurred. ECF No. 45 at 29-30. Indeed, Plaintiff alleges that when the information that Defendants had omitted from the market became known, Diebold's stock price fell in reaction. ECF No. 45 at 29-30; 35 at 47-51, 89-90, ¶¶126-135, 205-208. Plaintiff argues that this market reaction is proof that the information Plaintiff alleges was omitted, misrepresented, and not confirmatory. ECF No. 45 at 31.

In response to Defendants' "revised up" argument, Plaintiff claims that the market reacted to the news that Defendants had engaged in revenue recognition practices that were being investigated by the SEC and DOJ; as a result of the SEC inquiry, those practices were no longer in place and that Diebold's financial results were being restated as a result of those practices.

(1:10CV01461)

ECF Nos. 45 at 32; 35 at 47-51, 89-90 ¶¶126-135, 205-208. The market did not learn until nine months later the details of the announced restatement. ECF No. 45 at 32; 35 at 53, ¶140. Plaintiff alleges that it was the news of the restatement, and the contaminate non-compliance with GAAP, that caused the stock to drop, and Plaintiff to suffer losses as a result. ECF No. 45 at 32.

Defendants' argument arises principally arise from that required to prove loss causation rather than alleging it with "some indication of the loss and the causal connection that the plaintiff has in mind." *Dura*, 544 U.S. at 346-47; ECF Nos. 51, 52, 54. What ultimately caused Plaintiff's loss is not ripe for the Court to decide. The Court finds that Plaintiff has pleaded the appropriate causal connection in order to satisfy the pleading standard.

### 3. GAAP Violations

Defendants Krakora and Miller argue that Plaintiff rests its bill-and-hold revenue recognition allegations on the erroneous premise that Diebold violated GAAP by not strictly adhering to Plaintiff's interpretation of five criteria contained in a bulletin written by the accountants at the SEC–Staff Accounting Bulletin 104 ("SAB 104" or "Bulletin"). ECF Nos. 43-1 at 7; 42-1 at 16-17. Defendants further contend that Plaintiff's allegations do not involve violations of GAAP or any statute, rule or regulation. ECF Nos. 43-1 at 26; 42-1 at 16-17. Instead, Defendants allege that the allegations involve, at best, a different interpretation of "conceptual" guidance from the SEC, which cannot serve–as a matter of law–as the basis for a fraud claim. ECF Nos. 43-1 at 26; 42-1 at 16-17.

In response, Plaintiff alleges that Defendants' argument is mistaken because a Section

25

(1:10CV01461)

10(b) claim does not require a violation of GAAP nor does the existence of the requisite material misrepresentation depend, in any way, on a violation of GAAP or law. ECF No. 46 at 18-19 (citing *In re Comshare Inc. Sec. Litig.*, 183 F.3d 542, 548 (6th Cir. 1999); *Dura*, 544 U.S. at 341-42). Plaintiff argues that because the "restatement is an admission that financial statements were materially false at the time they were made," the requisite material misrepresentation has been established as a matter of law, and Defendants' arguments contesting the authority of SAB 104 are entirely beside the point. ECF No. 46 at 19 (citing *PR Diamonds, Inc.*, 364 F.3d at 695).

The Court finds that Plaintiff's allegations in the Staff Accounting Bulletin Board expound upon Plaintiff's allegations that Defendant Krakora and Miller participated in false and misleading reported earning and financial performance reflected in the Company's restatement. Plaintiff, therefore, has stated a claim upon which relief may be granted against Defendants.

### IV. Conclusion

For the aforementioned reasons, the Court denies Defendants KPMG, Diebold, Miller, Geswein, and Krakora's motions to dismiss (ECF Nos. 38, 39, 41, 43 and 42). All allegations outside of the five-year statute of repose are, nevertheless, dismissed. Plaintiffs are directed to file an amended complaint within 21 days of the filing of this order. That amended complaint shall not include allegations outside of the five-year period of repose.

IT IS SO ORDERED.

September 30, 2011
Date

Benita Y. Pearson
United States District Judge

26