PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LOUISIANA MUNICIPAL POLICE EMPLOYEES RETIREMENT SYSTEM, | ) ) ) | CASE NO. 1:10cv01461 |
| Plaintiffs, | ) ) | |
| v. | ) ) | JUDGE BENITA Y. PEARSON |
| KPMG, LLP., *et al.*, | ) ) | **MEMORANDUM OF OPINION AND ORDER** [Regarding ECF Nos. 65; 83; 87.] |
| Defendants. | ) | |

This action is before the Court upon the Motions for Reconsideration filed by Defendants Geswein and Krakora on October 13 and October 20, 2011. ECF Nos. 83; 87. The Court further notes Defendant Miller's Notice of Recent Authority (ECF No. 65), also relevant to the instant action. The Court has reviewed the memorandums in support, memorandums in opposition (ECF Nos. 66; 91), and reply memorandum (ECF Nos. 69; 92). For the reasons set forth below, the Court grants Defendants' Motions for Reconsideration, and partially reverses its previous Order (ECF No. 82) as it pertains to Defendant Miller.

**I. Background**

This case is brought by Plaintiffs pursuant to Section 10(b) and Section 20(a) of the Securities and Exchange Act of 1934, and Rule 10b-5, 17 C.F.R. § 240.10(b)-5. On September 30, 2011, the Court entered a memorandum of opinion and order that denied Defendants' motions to dismiss.[1] ECF No. 82. Prior to the Court's Order, Defendant Miller filed a notice of

---

[1] The Defendants motioning for dismissal were KPMG, Diebold, Miller, Geswein and Krakora. ECF No. 82.

(1:10cv01461)

recent authority, alerting the Court to the newly decided Supreme Court opinion *Janus Capital Group, Inc. v. First Derivative Traders*, 564 U.S. ___, 131 S. Ct. 2296 (2011).  ECF No. 65.  Plaintiffs responded (ECF No. 66), and Miller replied (ECF No. 69).

After the Court issued its Order (ECF No. 82), Defendants Geswein and Krakora filed motions for reconsideration based upon the *Janus* ruling.  ECF Nos. 83; 87.  Defendants Geswein, Krakora and Miller argue the *Janus* ruling changes the definition of who can "make" a statement for the purposes of Rule 10b-5 liability, and urge the Court to reconsider its Order denying dismissal.  ECF No. 83; 87.

## II.  Legal Standard

The authority to reconsider denial of a motion to dismiss before final judgment has been entered is well established.  *E.g.*, Fed.R.Civ.Pro. 54(b); *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988) ("[a] court has the power to revisit prior decisions of its own ... in any circumstance.").  While a motion for reconsideration should not be used to re-litigate issues previously considered, courts traditionally will find justification for reconsidering interlocutory orders when there is: 1) an intervening change of controlling law; 2) new evidence; or 3) a need to correct a clear error or prevent manifest injustice.  *Rodriguez v. Tennessee Laborers Health & Welfare Fund*, 89 Fed. App'x. 949, 959 (6th Cir. 2004) (unpublished disposition) (citing *Reich v. Hall Holding Company*, 990 F.Supp. 955, 965 (N.D.Ohio 1998)).  Here, the change or clarification in the law provided by the Supreme Court's decision in *Janus* justifies revisiting the prior decision denying Defendants' motions to dismiss.

2

(1:10cv01461)

### III. Discussion

**A. The *Janus* decision**

On June 13, 2011, the United States Supreme Court issued a decision in *Janus Captial Group, Inc. v. First Derivative Traders*, 564 U.S. ___, 131 S. Ct. 2296 (2011). In *Janus*, a shareholder attempted to bring a claim pursuant to Rule 10b-5 against Janus Capital Management LLC ("JCM") in relation to an allegedly fraudulent statement made by Janus Investment Fund ("JIF") in its prospectuses to investors. *Id.* at 2299. Janus Capital Group, Inc. ("JCG") was the parent company of JCM which, in turn, was the investment advisor and administrator for JIF. *Id*. The shareholder plaintiffs attempted to hold JCM liable based upon Rule 10b-5's prohibition against the making of any "'untrue statement of a material fact'in connection with the purchase or sale of any security." *Id.*, (citing 17 CFR § 240.10b-5).

The Court held that the complaint had been properly dismissed against JCM because JIF, not JCM, "made" the statements that the plaintiffs claimed were untrue and, therefore, JCM could not be liable for a violation of Rule 10b-5(b) despite the fact that the entities were related. *Janus*,131 S.Ct. at 2204-5. The Court's rationale turned upon an interpretation of the verb "to make," determining that "[o]ne makes a statement by stating it." *Id.* at 2302. The Court then announced that, pursuant to Rule 10b-5(b), "the maker of a statement is the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it." *Id.* at 2303. The Court harmonized its decision in *Janus* with its prior decision in *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164 (1994), stating that private suits may not be brought against "entities that contribute 'substantial assistance' to the

3

(1:10cv01461)

making of a statement but do not actually make it." *Janus*, 131 S.Ct. at 2302.

Defendants Miller, Geswein and Krakora moved the Court in the instant case to consider Plaintiffs' Rule 10b-5(b) claims against them in light of the recent *Janus* decision. ECF Nos. 65; 83; 87.² The Court does so, and states its findings below.

### B. Defendant Miller

Defendant Miller argues that Plaintiffs merely allege she "participated" in the misstatements at issue, rather than "made" them, and, pursuant to *Janus*, Plaintiffs' 10b-5(b) claim against her should be dismissed. ECF No. 65 at 1. Plaintiffs argue Miller's reading of *Janus* is too restrictive and, in any event, the Amended Complaint sufficiently alleges Miller engaged in conduct that would sustain liability as per 10b-5(a) and (c). ECF No. 66 at 3.

### 1. After *Janus*, Miller did not "make" statements for the purpose of Rule 10b-5(b)

The Supreme Court's decision in *Janus* warrants dismissal of Plaintiffs' 10b-5 claim against Miller. In *Janus*, the Supreme Court considered Rule 10b-5(b), which makes it "unlawful for any person, directly or indirectly....[t]o make any untrue statement of a material fact....in connection with the purchase or sale of any security." 17 C.F.R. § 240.10b-5(b). The Court announced that "the maker of a statement is the person or entity with ultimate authority over the

---

² Prior to the Court's Order (ECF No. 82), Defendant Miller filed a Notice of Recent Authority, as a supplement to her original Motion to Dismiss (ECF No. 42), in which she asked the Court to dismiss Count I of the Amended Complaint against her based upon the *Janus* decision. ECF No. 65 at 1. Plaintiffs responded (ECF No. 66), and Miller replied (ECF No. 69). The Court notes the parties had opportunity to be heard on the matter, and thus treats Miller's Notice of Recent Authority as a Motion to Dismiss.

4

(1:10cv01461)

statement, including its content and whether and how to communicate it...[o]ne who prepares or publishes a statement on behalf of another is not its maker." *Janus*, 131 S.Ct. at 2302. As the Court further explained, "[t]his rule might best be exemplified by the relationship between a speechwriter and a speaker. Even when a speechwriter drafts a speech, the content is entirely within the control of the person who delivers it. And it is the speaker who takes credit—or blame—for what is ultimately said." *Id*.

Given the clear rule announced in *Janus*, Miller cannot be said to have "made" a statement as per Rule 10b-5(b). Miller, by Plaintiffs' admissions, "participated" in the making of untrue statements, and "caus[ed] the Company to include Diebold's false and misleading ...financial statements in public press releases and filings." ECF No. 35 at 7, 93. Plaintiffs specifically allege Miller: "made various accounting entries...to Diebold's books"; "redrafted the Company's form sales contract"; "made off-setting journal entries" that were false; made "improper entries" that resulted in "improper capitalization of expenses," etc. ECF No. 35 at 9, 11, 17. All of these alleged acts resulted in Diebold's false or misleading statements. ECF No. 35 at 7. However, Miller did not publish the press releases or file the financial statements with the Securities and Exchange Commission (SEC): she prepared them. As per *Janus*, she is not considered the "maker," and cannot be held liable for the material included in the forms and press releases. *See Janus*, 131 S.Ct. at 2302-3 (rejecting the Government's argument that "'make' should be defined as 'create'" because it would create liability in a person "who provides the false or misleading information that another person then puts into the statement."); *see also Kerr v. Exobox Technologies Corp.*, 2012 WL 201872, at *11 (Jan.23, 2012) (applying

(1:10cv01461)

*Janus* to deny a claim against an individual who owned 88% to100% of Exobox because he did not sign the statements, "even if he supplied Exobox with the false statements at issue.")

Additionally, the *Janus* Court made clear it was maintaining the "narrow scope" of private rights of action, and, contrary to Plaintiffs' argument, did not limit its holding to secondary actors. *Janus,* 131 S.Ct. at 2302 n. 6 (noting the need for distinction between primary and secondary liability and announcing, "[w]e draw a clean line between the two – the maker is the person or entity with ultimate authority over a statement and others are not."); *see also Hawaii Ironworkers Annuity Trust Fund v. Cole, et al.*, 2011 WL 3862206, at *3 (Sept. 7, 2011) ("[*Janus*] made clear that it intended its analysis to elucidate the contours of primary and secondary liability under Rule 10b-5(b)."). Thus, Plaintiffs' argument that *Janus* limited its holding to secondary actors is without merit.

**2. To the extent Plaintiffs allege Miller is liable based upon "scheme liability," the claim is unavailable to Plaintiffs**

Plaintiffs argue Miller's alleged conduct violated Rule 10b-5(a) and (c).[3] ECF No. 66 at 1. Miller argues any and all allegations of the Amended Complaint pertain to conduct that allegedly contributed only to fraudulent statements and, therefore, even prior to *Janus*, could only implicate Rule 10b-5(b). ECF No. 69 at 4.

---

[3] Plaintiffs, in their Amended Complaint, generally alleged violations of all sections of 10b-5. ECF No. 35 at 93. In opposition to defendants' motions to dismiss, Plaintiffs do not address the issue of "scheme liability." ECF No. 46. Plaintiffs have revived their apparent allegations of scheme liability in response to Miller's Notice of Recent Authority and motion to dismiss, ECF No. 65.

(1:10cv01461)

### a. Rule 10b-5(a) and (c)

The pertinent Rule 10b-5 sections make it unlawful "(a) to employ any device, scheme, or artifice to defraud"; "(c) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security." 17 CFR § 240.10b–5(a), (c). Rules 10b-5(a) or (c) prohibits "activities designed to affect the price of a security artificially by simulating market activity that does not reflect genuine investor demand." *Desai v. Deutsche Bank Securities, Ltd.*, 573 F.3d 931, 940-41 (9th Cir. 2009). A plaintiff must allege conduct beyond misstatements in order to allege Rule 10b-5(a) or Rule 10b-5(c) "scheme liability." *See, e.g., Benzon v. Morgan Stanley Distributors, Inc.*, 420 F.3d 598, 610 (6th Cir. 2005) ("[W]e agree with Plaintiffs that Rules 10b-5(a) and (c) encompass conduct beyond disclosure violations..."); *Steed v. Warrior Capital, LLC*, 2007 WL 1110757, *5 (W.D. Okla. April 11, 2007) (granting motions to dismiss and noting "a statement that is, in essence, a misrepresentation (or omission) claim under subsection (b) may not be recast as a claim under subsection (a) or (c) so as to evade the pleading requirements which apply in misrepresentation cases.").

Generally, courts have found that subsections (a) or (c) are not a "back door into liability for those who help others make a false statement or omission in violation of subsection (b) of Rule 10b-5(b)." *In re Parmalat Sec. Litig.*, 376 F. Supp.2d 472, 503 (S.D.N.Y. 2005); *see also In re Alstom SA*, 406 F.Supp.2d 433, 476 (S.D.N.Y. 2005) ("a plaintiff cannot state a claim under Rule 10b-5(a) and (c) by pointing to fraudulent statements and claiming that the defendants were part of a scheme to make those statements, as this method of pleading would result in the

(1:10cv01461)

circumvention of...*Central Bank's* prohibition of aider and abettor liability.")

### b.  *Stoneridge* and *Janus* decisions

In *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta*, 552 U.S. 148 161-2 (2008), the Supreme Court discussed scheme liability.  In *Stoneridge*, plaintiffs brought a claim pursuant to the private right of action implied in Rule 10b-5 against "entities who...agreed to arrangements that allowed the investors' company [Charter] to mislead its auditor and issue a misleading financial statement affecting the stock price."  *Id*. at 152-3.  Plaintiffs alleged the companies "knew of Charter's intention to use the transactions to inflate its revenues and knew the resulting financial statements issued by Charter would be relied upon by investors."  *Id*. at 155.  In this way, the plaintiffs argued, the companies "engaged in conduct with the purpose and effect of creating a false appearance of material fact to further a scheme to misrepresent Charter's revenue," and, without the companies' deceptive acts, Charter's financial statements would not have been misleading.  *Id*. at 160.

The Court determined the companies were not liable for want of the necessary reliance.  The Court noted plaintiffs were asking the Court to adopt a concept of reliance that indicated "investors rely not only upon the public statements relating to a security but also upon the transactions those statements reflect."  *Id*.  To do so, the Court reasoned, would mean the implied cause of action would reach the whole marketplace."  *Id*.  "It was Charter, not [the companies], that misled its auditor and filed fraudulent financial statements; nothing [the companies] did made it necessary or inevitable for Charter to record the transactions as it did."  *Id*. at 161.

Plaintiffs in the instant case argue Miller is liable based upon scheme liability because

(1:10cv01461)

"the public disclosure of the falsified financial results was both inevitable and required by the applicable disclosure regulations." ECF No. 66 at 11. Plaintiffs argue Miller falsified the financial results, and "these fraudulent numbers were then disclosed to the public pursuant to the reporting requirements Diebold was bound to follow." ECF No. 66 at 11. Miller argues scheme liability requires more than misstatements, or there would be no difference between liability pursuant to 10b-5(b) on the one hand, and 10b-5(a) and (c) on the other. ECF No. 69 at 5.

The instant Court notes Plaintiffs do not sufficiently allege Miller engaged in conduct other than falsifying statements which were then included in Diebold's financial reports. The Court further notes Plaintiffs did not rely upon Miller's financial reports– Plaintiffs relied upon Diebold's financial reports.[4] By Plaintiff's own admissions, Diebold, Geswein and Krakora published, filed and/or signed the financial reports and knew or should have known of the misstatements inherent in the reports. ECF No. 35. Plaintiffs cannot then reasonably ask the Court to find that Miller's conduct made it "inevitable" the allegedly fraudulent reports were filed. *See, e.g.*, *Stoneridge*, 552 U.S. at 161.[5]

Furthermore, after *Janus*, the Court cannot believe Supreme Court precedent intends to render a situation whereby a misstatement defendant is liable pursuant to Rule 10b-5(a) and (c)

---

[4] The *Stoneridge* Court noted, "[r]eliance by the plaintiff upon the defendant's deceptive acts is an essential element of the 10(b) private cause of action. It ensures that, for liability to arise, the 'requisite causal connection...'exists as a predicate for liability." 552 U.S. at 159 (citing *Basic Inc. v. Levinson*, 485 U.S. 224, 243 (1988)).

[5] In *Stoneridge*, the companies were third parties Charter did business with, whereas here, Miller was an employee of Diebold. The analysis does not change, however – Plaintiffs allege Diebold, Geswein and Krakora knew or should have know about the false reports incorporated into the financial statements, and they would have simply deleted or modified them.

(1:10cv01461)

but is not liable pursuant to 10b-5(b), the subsection that deals specifically with misstatements. See *S.E.C. v. Kelly*, 817 F.Supp.2d 340, 344 (S.D.N.Y. 2011) ("[w]here the SEC is attempting to impose primary liability under subsections (a) and (c) of Rule 10b-5 for a scheme based upon an alleged false statement, permitting primary scheme liability when the defendant did not 'make' the misstatement would render the rule announced in *Janus* meaningless."). The Court further notes that the Supreme Court has repeatedly held that the scope of the implied private right of action in § 10(b) is very narrow, and that Congress, when faced with the recommendation to create an express right of action for aiders and abettors, declined to do so. *Stoneridge*, 552 U.S. at 157-7; *Central Bank*, 511 U.S. at 177; *Janus*, 131 S.Ct. at 2303. Heeding Supreme Court precedent, the instant Court declines to take an expansive view of a private right of action in the present case.

### C. Defendants Geswein and Krakora

Defendants Geswein and Krakora argue that, pursuant to *Janus*, Diebold was the entity with ultimate authority over the content in the filed documents and press releases; thus only Diebold can be the "maker" of the statements. ECF Nos. 83 at 7; 87 at 7. Plaintiffs argue Geswein and Krakora: 1) signed the SEC filings; 2) signed certificates required by Sarbanes-Oxley attesting to the sufficiency of Diebold's internal financial controls and the material accuracy of the financial results released; and 3) in the case of Krakora, was quoted in at least one press release. ECF No. 91 at 10. Plaintiffs contend that based upon these acts Geswein and

(1:10cv01461)

Krakora are considered to have made the statements even after *Janus*.[6]

Plaintiffs allege Geswein and Krakora, unlike Miller, were corporate officers who signed certain statements published by Diebold and thus can be considered to have made the statements. *E.g.* ECF No. 35 at 30-31.  In *Janus,* the facts concerned only corporations, but the Court noted that the speaker is a "person or entity with ultimate authority over the statement...[a]nd in the ordinary case, attribution within a statement or implicit from surrounding circumstances is strong evidence that a statement was made by–and only by–the party to whom it is attributed." *Janus,* 131 S.Ct. at 2302.

Subsequent courts have interpreted the attribution element of *Janus* to reach corporate officers who sign statements filed with the SEC and have been quoted in press releases.  *See, e.g., In Re Merck & Co., Inc. Sec., Derivative & ERISA Litig.*, 2011 WL 3444199 at * 25 (Aug. 8, 2011) (noting *Janus* cannot be read to limit liability when "Scolnick was at the time of each attributed statement an officer of Merck.  He signed SEC forms and was quoted in articles and reports in his capacity as Merck's Executive Vice President....He made the statements pursuant to his responsibility and authority to act as an agent of Merck."); *Local 703, I.B. of T. Grocery and Food Employees Welfare Fund v. Regions Financial Corp.*, 2011 U.S. Dist. LEXIS 93873, at *15 (N.D. Ala. Aug. 23, 2011) ("Nothing in *Janus* stands for the proposition that CEOs and CFOs can not be liable for false and misleading statements in their own company's financial statements, for which they signed."); *S.E.C. v. Das*, 2011 WL 4375787, at *6 (D. Neb. Sept. 20,

---

[6] Plaintiffs, in opposition, expressly deny they are relying on Rule 10b-5(a) and (c) to maintain its claims against Geswein and Krakora.  ECF No. 91 at 11.

11

(1:10cv01461)

2011) (finding CFOs who signed the Forms 10-K and 10-Q were the "makers" of the statements.).[7]

Because Plaintiffs sufficiently allege Geswein and Krakora signed the allegedly false SEC filings and financial statements, Plaintiffs' Rule 10b-5(b) claim against Geswein and Krakora is still a viable claim, even after *Janus*. The Court reaffirms its previous denial of the motion to dismiss filed by Geswein and Krakora.

### IV. Conclusion

For the reasons stated above, the Court grants Defendants' motions for reconsideration. ECF Nos. 83; 87. Upon review, the Court modifies its previous order in part, ECF No. 82, and dismisses Count I, the Rule 10b-5(b) claim, against Defendant Miller. The Court leaves unmodified its earlier order denying the motions to dismiss filed by Defendants Geswein and Krakora.

IT IS SO ORDERED.

| | |
|---|---|
|   August 31, 2012   |   /s/ Benita Y. Pearson   |
| Date | Benita Y. Pearson |
| | United States District Judge |

---

[7] *See also City of Roseville Employees Ret. Sys. v. Energysolutions, Inc.*, 814 F.Supp.2d 395 (S.D.N.Y. 2011) (same); *In re Smith Barney Transfer Agent Litigation*, 2012 WL 3339098, at *10-1 (S.D.N.Y. Aug. 15, 2012)(same); *S.E.C. v. Brown*, 2012 WL 2927712, at *5 (D.D.C.2012) (same); *SEC v. Carter*, 2011 WL 5980966, at *3 (N.D.Ill. Nov. 28, 2011) (same).