UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF OHIO

EASTERN DIVISION

| | | |
|---|---|---|
| LOUISIANA MUNICIPAL POLICE EMPLOYEES RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated, | ) ) ) ) | No. 1:10-cv-01461-BYP <u>CLASS ACTION</u> |
| Plaintiff, | ) ) ) | Judge Benita Y. Pearson |
| vs. | ) ) | |
| KPMG, LLP, et al., | ) ) | |
| Defendants. | ) ) ) | |

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION OF
SETTLEMENT PROCEEDS

LANDSKRONER • GRIECO • MERRIMAN, LLC
JACK LANDSKRONER (0059227)
1360 West 9th Street, Suite 200
Cleveland, OH  44113
Telephone:  216/522-9000
216/522-9007 (fax)

Liaison Counsel

ROBBINS GELLER RUDMAN
  & DOWD LLP
DEBRA J. WYMAN
SUSANNAH R. CONN
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

Lead Counsel for Plaintiff

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................................................1

II.    HISTORY OF THE LITIGATION ..............................................................................3

III.    THE NOTICE OF SETTLEMENT SATISFIES RULE 23 AND DUE PROCESS REQUIREMENTS..................................................................................................5

IV.    THE SETTLEMENT SHOULD BE APPROVED BY THE COURT.............................7

    A.    The Standards for Judicial Approval of Class Action Settlements.........................7

    B.    The Settlement Satisfies the Criteria for Final Approval........................................9

        1.    The Likelihood of Success on the Merits ....................................................9

        2.    The Complexity, Expense, and Likely Duration of the Litigation ............16

        3.    The Stage of Proceedings and Extent of Discovery..................................18

        4.    The Settlement Is the Result of "Arm's-Length" Negotiations Among Competent and Experienced Counsel ...........................................19

        5.    The Reaction of the Class .........................................................................21

        6.    The Public Interest ...................................................................................21

V.    THE PLAN OF ALLOCATION OF SETTLEMENT PROCEEDS IS FAIR AND REASONABLE AND SHOULD BE APPROVED........................................................22

VI.    CONCLUSION.........................................................................................................23

915672_1

# TABLE OF AUTHORITIES

Page

## CASES

*Armstrong v. Gallia Metro. Hous. Auth.*,
  No. 2:98-CV-373, 2001 WL 1842452
  (S.D. Ohio Apr. 23, 2001)...................................................................................................19

*Bronson v. Bd. of Educ.*,
  604 F. Supp. 68 (S.D. Ohio 1984) .....................................................................................8, 9

*Brotherton v. Cleveland*,
  141 F. Supp. 2d 894 (S.D. Ohio 2001) .............................................................................8, 21

*Bryant v. Avado Brands, Inc.*,
  100 F. Supp. 2d 1368 (M.D. Ga. 2000), *rev'd on
  other grounds sub nom. Bryant v. Dupree*,
  252 F.3d 1161 (11th Cir. 2001) ...........................................................................................16

*Carson v. Am. Brands, Inc.*,
  450 U.S. 79 (1981).................................................................................................................9

*D'Amato v. Deutsche Bank*,
  236 F.3d 78 (2d Cir. 2001).................................................................................................20

*Dura Pharms., Inc. v. Broudo*,
  544 U.S. 336 (2005)............................................................................................................14

*Enter. Energy Corp. v. Columbia Gas Transmission Corp.*,
  137 F.R.D. 240 (S.D. Ohio 1991) .........................................................................................7

*Fidel v. Farley*,
  534 F.3d 508 (6th Cir. 2008) ...............................................................................................5

*Goldstein v. MCI WorldCom*,
  340 F.3d 238 (5th Cir. 2003) ...............................................................................................16

*Granada Invs., Inc. v. DWG Corp.*,
  823 F. Supp. 448 (N.D. Ohio 1993)......................................................................................8

*Hubbard v. BankAtlantic Bancorp, Inc.*,
  688 F.3d 713 (11th Cir. 2012) .............................................................................................14

*Hyland v. HomeServices of Am., Inc.*,
  No. 3:05-CV-612-R, 2012 U.S. Dist. LEXIS 61994
  (W.D. Ky. May 3, 2012) .......................................................................................................21

- ii -

**Page**

*In re Art Materials Antitrust Litig.*,
  100 F.R.D. 367 (N.D. Ohio 1983) ...............................................................16, 19

*In re Broadwing, Inc. ERISA Litig.*,
  252 F.R.D. 369 (S.D. Ohio 2006) ...............................................................17, 22

*In re Chambers Dev. Sec. Litig.*,
  912 F. Supp. 822 (W.D. Pa. 1995)...................................................................17

*In re Chicken Antitrust Litig.*,
  810 F.2d 1017 (11th Cir. 1987) .......................................................................22

*In re Comshare, Inc. Sec. Litig.*,
  183 F.3d 542 (6th Cir. 1999) ...........................................................................10

*In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*,
  248 F.R.D. 483 (E.D. Mich. 2008) ........................................................1, 12, 16

*In re Ikon Office Solutions, Inc.*,
  194 F.R.D. 166 (E.D. Pa. 2000).................................................................10, 16

*In re JDS Uniphase Corp. Sec. Litig.*,
  No. C-02-1486 CW (EDL), 2007 WL 4788556
  (N.D. Cal. Nov. 27, 2007)................................................................................13

*In re Oracle Corp. Sec. Litig.*,
  No. C 01-00988 SI, 2009 U.S. Dist. LEXIS 50995
  (N.D. Cal. June 16, 2009), *aff'd*, 627 F.3d 376 (9th Cir. 2010)....................15

*In re Packaged Ice Antitrust Litig.*,
  No. 08-MD-01952, 2010 U.S. Dist. LEXIS 77645
  (E.D. Mich. Aug. 2, 2010) .................................................................................7

*In re Packaged Ice Antitrust Litig.*,
  No. 08-MDL-01952, 2011 U.S. Dist. LEXIS 150427
  (E.D. Mich. Dec. 13, 2011)...............................................................................18

*In re PaineWebber Ltd. P'ships Litig.*,
  171 F.R.D. 104 (S.D.N.Y.),
  *aff'd*, 117 F.3d 721 (2d Cir. 1997)..................................................................22

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
  148 F.3d 283 (3d Cir. 1998)..............................................................................18

- iii -

**Page**

*In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*,
  396 F. Supp. 2d 1178 (D. Colo. 2004)..................................................................................11

*In re Telectronics Pacing Sys.*,
  137 F. Supp. 2d 985 (S.D. Ohio 2001) .......................................................... *passim*

*In re Tyco Int'l, Ltd.*,
  535 F. Supp. 2d 249 (D.N.H. 2007)..............................................................................14, 15

*In re Veeco Instruments Inc. Sec. Litig.*,
  No. 05 MDL 01695 (CM), 2007 U.S. Dist. LEXIS 85629
  (S.D.N.Y. Nov. 7, 2007) ..............................................................................................15

*In re Warner Commc'ns Sec. Litig.*,
  618 F. Supp. 735 (S.D.N.Y. 1985),
  *aff'd*, 798 F.2d 35 (2d Cir. 1986) ................................................................................15

*In re Xcel Energy, Inc.*,
  364 F. Supp. 2d 980 (D. Minn. 2005)..............................................................................2

*Kogan v. AIMCO Fox Chase, L.P.*,
  193 F.R.D. 496 (E.D. Mich. 2000) ........................................................................9, 18

*Lewis v. Newman*,
  59 F.R.D 525 (S.D.N.Y. 1973) ....................................................................................16

*Manners v. Am. Gen. Life Ins. Co.*,
  No. 3-98-0266, 1999 U.S. Dist. LEXIS 22800
  (M.D. Tenn. Aug. 11, 1999) ........................................................................................7

*Mullane v. Cent. Hanover Bank & Trust Co.*,
  339 U.S. 306 (1950)......................................................................................................6

*New Eng. Health Care Emps. Pension Fund v. Fruit of the Loom, Inc.*,
  234 F.R.D. 627 (W.D. Ky. 2006)................................................................................16

*Phillips v. Scientific-Atlanta, Inc.*,
  489 Fed. Appx. 339 (11th Cir. 2012)..........................................................................14

*Rankin v. Rots*,
  No. 02-CV-71045, 2006 U.S. Dist. LEXIS 45706
  (E.D. Mich. June 28, 2006)..........................................................................................8

*Reynolds v. Beneficial Nat'l Bank*,
  288 F.3d 277 (7th Cir. 2002) ......................................................................................17

Page

*Rotuna v. W. Customer Mgmt. Grp., LLC*,
  No. 4:09CV1608, 2010 U.S. Dist. LEXIS 58912
  (N.D. Ohio June 15, 2010) ..................................................................................22

*Sullivan v. DB Invs., Inc.*,
  667 F.3d 273 (3d Cir. 2011),
  *cert. denied*, 132 S. Ct. 1876 (2012) ................................................................22

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007)............................................................................................22

*Thacker v. Chesapeake Appalachia, L.L.C.*,
  695 F. Supp. 2d 521 (E.D. Ky. 2010), *aff'd sub nom.*
  *Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*,
  636 F.3d 235 (6th Cir. 2011) ........................................................................19, 21

*Todd v. Retail Concepts, Inc.*,
  No. 3:07-0788, 2008 U.S. Dist. LEXIS 117126
  (M.D. Tenn. Aug. 22, 2008) .................................................................................8

*UAW v. GMC*,
  497 F.3d 615 (6th Cir. 2007) .......................................................................7, 8, 22

*Uhl v. Thoroughbred Tech. & Telecomms. Inc.*,
  No. IP 00-1232-C B/S, 2001 U.S. Dist. LEXIS 13115
  (S.D. Ind. Aug. 28, 2001).....................................................................................6

*Walsh v. Great Atl. & Pac. Tea Co.*,
  726 F.2d 956 (3d Cir. 1983)...............................................................................22

*White v. NFL*,
  822 F. Supp. 1389 (D. Minn. 1993)....................................................................23

*Whitford v. First Nationwide Bank*,
  147 F.R.D. 135 (W.D. Ky. 1992).........................................................................8

*Williams v. First Nat'l Bank*,
  216 U.S. 582 (1910)..............................................................................................7

*Williams v. Vukovich*,
  720 F.2d 909 (6th Cir. 1983) ...........................................................................8, 9, 10, 19

**Page**

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.

§78j(b)...........................................................................................................4, 10, 11, 13
§78t(a)...................................................................................................................4, 13
§78u-4(a)(7)..................................................................................................................6

Federal Rules of Civil Procedure

Rule 1...........................................................................................................................2
Rule 23......................................................................................................................5, 7
Rule 23(b)(3).................................................................................................................5
Rule 23(c)(2)(B)............................................................................................................5
Rule 23(e)...................................................................................................................1, 6
Rule 23(e)(1).................................................................................................................5

17 C.F.R.

§240.10b-5.............................................................................................................4, 10, 15

**SECONDARY AUTHORITY**

2 Herbert Newberg & Alba Conte,
*Newberg on Class Actions* (3d ed. 1992)

§11.48........................................................................................................................21

## I.    INTRODUCTION

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Lead Plaintiff Building Trades United Pension Trust Fund ("Lead Plaintiff" or "Building Trades") and proposed Class Representative Alaska Electrical Pension Fund ("Alaska Electrical" and, collectively, "Plaintiffs"), respectfully submit this memorandum of law in support of their motion for final approval of the settlement of this Litigation on the terms set forth in the Stipulation of Settlement dated as of November 8, 2013 ("Stipulation" or "Settlement"),[1] which was previously submitted to the Court. Dkt. No. 181.  The Settlement provides for the payment on behalf of Defendants of Thirty-One Million Six Hundred Thousand Dollars ($31,600,000.00) in cash plus interest, and, if approved by the Court, will resolve this matter in its entirety between the parties.[2]  The Settlement is the result of extensive arm's-length negotiations between the parties with the assistance of retired U.S. District Court Judge Layn R. Phillips, a highly respected and experienced mediator.[3]  As discussed herein and in the Wyman Declaration, Plaintiffs and their counsel have obtained an excellent result for the Class.[4]

---

[1]    All capitalized terms not otherwise defined herein shall have the same meanings as set forth in the Stipulation.

[2]    "Defendants" means Diebold, Gregory T. Geswein, Kevin J. Krakora and KPMG.

[3]    *See In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*, 248 F.R.D. 483, 498, n.14 (E.D. Mich. 2008) (recognizing "the outstanding work done by Judge Phillips" in settlement negotiations and "the added benefit of the insight and considerable talents of [this] former federal judge who is one of the most prominent and highly skilled mediators of complex actions").

[4]    The Court is respectfully referred to the accompanying Declaration of Debra J. Wyman in Support of Motion for (1) Final Approval of Class Action Settlement and Plan of Allocation of Settlement Proceeds; and (2) Application of Plaintiffs' Counsel for an Award of Attorneys' Fees and Expenses ("Wyman Decl.") for a more detailed history of the Litigation, the extensive efforts of Plaintiffs' counsel, and the factors bearing on the reasonableness of the Settlement, Plan of Allocation of Settlement proceeds, and counsel's request for an award of attorneys' fees and expenses.

915672_1

This case was carefully investigated and vigorously litigated.  From the outset, Defendants asserted strong defenses, adamantly denied liability, and were firm in their belief that Plaintiffs could not prevail on the claims asserted.  While the case settled at a relatively early stage of the Litigation, a result consistent with the purposes of the Federal Rules of Civil Procedure,[5] Plaintiffs' counsel spent a considerable amount of time and resources prior to the resolution of the Litigation.  The Settlement was achieved only after Plaintiffs' counsel: (i) conducted a thorough pre-filing investigation of Plaintiffs' claims, including a meticulous review of Diebold's public filings, analyst reports, and media items; (ii) filed a detailed Amended Class Action Complaint for Violation of the Securities Exchange Act of 1934 after further investigation ("Amended Complaint"); (iii) filed the Second Amended Class Action Complaint for Violation of the Securities Exchange Act of 1934 ("Second Amended Complaint"); (iv) successfully opposed Defendants' comprehensive motions to dismiss the Amended Complaint and the Second Amended Complaint; (v) propounded multiple sets of discovery to each Defendant; (vi) responded to multiple requests for production of documents and interrogatories from Defendants; (vii) filed a motion for class certification, which was supported by expert testimony; (viii) met extensively with experts in the fields of economics, loss causation and insurance coverage; and (ix) prepared for and attended mediation with Judge Phillips followed by post-mediation settlement discussions with the assistance of Judge Phillips.  Wyman Decl., ¶3.  During the settlement negotiations, Plaintiffs' counsel made it clear that, while they were prepared to fairly assess the strengths and weaknesses of their case, they would (and did) continue to litigate rather than settle for less than an amount that was in the Class' best interest.

The Settlement takes into account the specific risks and obstacles that Plaintiffs and the Class would face if litigation were to continue.  Plaintiffs' counsel are highly experienced in prosecuting

---

[5]   *See In re Xcel Energy, Inc.*, 364 F. Supp. 2d 980, 992 (D. Minn. 2005) (noting that early resolution of the case is consistent with Rule 1 of the Federal Rules of Civil Procedure).

securities class actions, and have concluded that the Settlement is an excellent recovery in the light of risk, delay and expense of continued litigation.  Wyman Decl., ¶¶4-5.  This conclusion is based on, among other things, the substantial and certain recovery obtained when weighed against the significant risk, expense, and delay presented in continuing the Litigation through the completion of discovery, class certification, Defendants' anticipated motion(s) for summary judgment, trial, and probable post-trial motions and appeal(s); a complete analysis of the evidence adduced to date; past experience in litigating complex actions similar to the present action; and the serious disputes between the parties concerning the merits and damages.  *Id.*, ¶¶7-8, 41-50.

For all the reasons discussed herein and in the Wyman Declaration, it is respectfully submitted that the Settlement is eminently fair, reasonable, and adequate to the Class and should be finally approved by the Court.  Plaintiffs also request that the Court approve the Plan of Allocation of Settlement proceeds.  This plan, which was set forth in the Notice that was sent to Class Members, governs how Class Members' claims will be calculated and ultimately, how money will be distributed to Authorized Claimants.  The plan, which was developed with the assistance of Plaintiffs' damage expert, tracks Plaintiffs' theory of damages, and is fair, reasonable, and adequate, and should likewise be approved.

## II.    HISTORY OF THE LITIGATION

The following is a brief history of the Litigation.  The Court is respectfully referred to the Wyman Declaration for a more detailed description of the history of the Litigation, including a factual summary of Plaintiffs' allegations, the procedural history, Plaintiffs' investigation and analysis, and the factors bearing on the reasonableness of the Settlement and Plan of Allocation.

On June 30, 2010, this class action was filed by the Louisiana Municipal Police Employees Retirement System in the United States District Court for the Northern District of Ohio (the "Court").  By Court Order dated September 30, 2010, plaintiff Building Trades was appointed Lead

Plaintiff, and Robbins Geller Rudman & Dowd LLP was appointed Lead Counsel.  On December 6, 2010, Lead Plaintiff filed the Amended Complaint against Diebold, three of its former financial and accounting executives[6] and its auditor KPMG, for violations of §§10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 promulgated thereunder.  The Amended Complaint alleged that the Diebold Defendants[7] and Ms. Miller fraudulently manipulated the Company's earnings and financial performance, which caused Diebold to publish materially false and misleading financial results during the Class Period, and that KPMG, as the Company's outside auditor during the Class Period, was aware of these accounting manipulations but nevertheless issued unqualified audit reports throughout the Class Period.

On February 4, 2011, each named Defendant separately filed a motion to dismiss the Amended Complaint.  On September 30, 2011, the Court denied each Defendant's motion to dismiss the Amended Complaint.  The Court, however, found that certain allegations fell outside of the five-year statute of repose and directed Plaintiffs to file an amended complaint that did not include those allegations.  Plaintiffs filed the Second Amended Complaint in response to this order on October 18, 2011.

On November 18, 2011, each of the Diebold Defendants separately filed a motion to dismiss the Second Amended Complaint.  KPMG answered the Second Amended Complaint on November 30, 2011.  All of the Diebold Defendants' motions to dismiss were denied on August 31, 2012.

Also on November 18, 2011, each of the Diebold Defendants separately filed a motion to strike the allegations in the Second Amended Complaint that preceded the five-year repose period.  On February 14, 2012, the Court granted the motions to strike.  Plaintiffs filed a motion for

---

[6]  Sandra Miller, Diebold's former Director of Corporate Accounting, was subsequently dismissed from the suit voluntarily, with prejudice.

[7]  "Diebold Defendants" refers to Diebold, Inc., Kevin J. Krakora, and Gregory T. Geswein, as well as former defendant Sandra Miller.

reconsideration of this order on February 21, 2012.  Plaintiffs' motion for reconsideration was granted on August 31, 2012.

Each of the Diebold Defendants separately answered the Second Amended Complaint on October 30, 2012.

On March 12, 2013, the parties participated in an all-day mediation session with Judge Phillips presiding, which did not yield an agreement.  After the March mediation, the Settling Parties continued to engage in settlement negotiations with the assistance of Judge Phillips.

On May 17, 2013, Plaintiffs filed a motion for class certification, with Building Trades and Alaska Electrical nominated as class representatives.  The motion for class certification was pending at the time the parties reached an agreement to settle.  At the time of settlement, the parties had exchanged interrogatory and document requests and responses, but no documents had yet been produced by any party.

In June 2013, the parties reached an agreement-in-principle to settle the Litigation with the assistance of Judge Phillips.  Subsequently, the Settling Parties continued negotiations resulting in the terms and conditions set forth in the Stipulation.

## III.   THE NOTICE OF SETTLEMENT SATISFIES RULE 23 AND DUE PROCESS REQUIREMENTS

Pursuant to Federal Rule of Civil Procedure 23(e)(1), a district court, when approving a class action settlement, "'must direct notice in a reasonable manner to all class members who would be bound by the proposal.'"  *Fidel v. Farley*, 534 F.3d 508, 513 (6th Cir. 2008) (citation omitted).  In addition to the requirements of Rule 23, the Constitution's Due Process Clause also guarantees unnamed class members the right to notice of certification or settlement.  *See id.* at 513.  Generally, "[f]or any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).  A notice of settlement satisfies

915672_1

due process when it is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).  The law requires "'adequate notice,' not perfect notice."  *Uhl v. Thoroughbred Tech. & Telecomms. Inc.*, No. IP 00-1232-C B/S, 2001 U.S. Dist. LEXIS 13115, at *63 (S.D. Ind. Aug. 28, 2001).  Here, the Notice, in plain, easily-understood language, advises the Class Members of the essential terms of the Settlement, sets forth the procedure and deadline for submitting objections and requests for exclusion to the Settlement, provides whom to contact for additional information, and provides specifics regarding the date, time, and place of the Settlement Hearing.  The Notice also contains information regarding Plaintiffs' counsel's Fee and Expense Application, and the Plan of Allocation.  Thus, the Notice provides the necessary information for Class Members to make an informed decision regarding the Settlement and their rights with respect to it.

Furthermore, in securities class actions, the Private Securities Litigation Reform Act of 1995 ("PSLRA") requires the notice of settlement to include:

> (1) "[t]he amount of the settlement proposed to be distributed to the parties to the action, determined in the aggregate and on an average per share basis"; (2) "[i]f the parties do not agree on the average amount of damages per share that would be recoverable if the plaintiff prevailed on each claim alleged under this chapter, a statement from each settling party concerning the issue or issues on which the parties disagree"; (3) "a statement indicating which parties or counsel intend to make . . . an application [for attorneys' fees or costs], the amount of fees and costs that will be sought (including the amount of such fees and costs determined on an average per share basis), and a brief explanation supporting the fees and costs sought"; (4) "[t]he name, telephone number, and address of one or more representatives of counsel for the plaintiff class who will be reasonably available to answer questions from class members"; and (5) "[a] brief statement explaining the reasons why the parties are proposing the settlement."

15 U.S.C. §78u-4(a)(7).  The Notice includes all of the information required by the PSLRA.

In the Order preliminarily approving settlement ("Preliminary Approval Order") (Dkt. No. 183), the Court approved Plaintiffs' proposed plan for notifying Class Members about the Settlement

and Plan of Allocation of Settlement proceeds. Preliminary Approval Order, ¶¶4-5.[8] Plaintiffs have satisfied all of the elements of the notice plan approved by the Court in the Preliminary Approval Order. *See generally* the Declaration of Carole K. Sylvester Re A) Mailing of the Notice of Proposed Settlement of Class Action and the Proof of Claim and Release Form, B) Publication of the Summary Notice, and C) Internet Posting ("Sylvester Decl."), submitted herewith.

Plaintiffs respectfully submit that the notice program implemented in this Litigation constitutes the best notice practicable under the circumstances and satisfies the requirements of due process, Federal Rule of Civil Procedure 23, and the PSLRA. *See, e.g.*, *Manners v. Am. Gen. Life Ins. Co.*, No. 3-98-0266, 1999 U.S. Dist. LEXIS 22800, at *31 (M.D. Tenn. Aug. 11, 1999) (finding individual notice mailed to class members combined with summary publication constituted "the best practicable notice" and were "reasonably calculated, under the circumstances" to meet the requirements of Rule 23 and due process).

## IV. THE SETTLEMENT SHOULD BE APPROVED BY THE COURT

### A. The Standards for Judicial Approval of Class Action Settlements

It is well settled that compromises of disputed claims are favored by the courts. *Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910); *UAW v. GMC*, 497 F.3d 615, 632 (6th Cir. 2007). "Being a preferred means of dispute resolution, there is a strong presumption by courts in favor of settlement." *In re Telectronics Pacing Sys.*, 137 F. Supp. 2d 985, 1027 (S.D. Ohio 2001); *see also In re Packaged Ice Antitrust Litig.*, No. 08-MD-01952, 2010 U.S. Dist. LEXIS 77645, at *33-*34 (E.D. Mich. Aug. 2, 2010); *Enter. Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 246 (S.D. Ohio 1991) ("The law generally favors and encourages the settlement of class actions."). This is particularly true in class actions and other complex cases where substantial resources can be

---

[8] On November 20, 2013, the Court issued an Order modifying certain dates in the Preliminary Approval Order (Dkt. No. 184).

conserved by avoiding the time, cost, and rigors of prolonged litigation.  *See Rankin v. Rots*, No. 02-CV-71045, 2006 U.S. Dist. LEXIS 45706, at *8-*9 (E.D. Mich. June 28, 2006) ("[T]he Court should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation.").

Pursuant to Rule 23(e), a court should approve a class action settlement if it is fair, adequate, and reasonable.  *UAW*, 497 F.3d at 631; *Williams v. Vukovich*, 720 F.2d 909, 921 (6th Cir. 1983); *Telectronics*, 137 F. Supp. 2d at 1008; *Brotherton v. Cleveland*, 141 F. Supp. 894, 903 (S.D. Ohio 2001).  In determining whether a proposed settlement is fair, adequate, and reasonable, the Sixth Circuit and the district courts therein have established factors for a court to consider, including: (1) the plaintiffs' likelihood of ultimate success on the merits balanced against the amount and form of relief offered in the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the risk of fraud or collusion; (4) the stage of the proceedings and the amount of discovery completed; (5) the judgment of experienced trial counsel; (6) the nature of the negotiations; (7) the objections raised by the class members; and (8) the public interest.  *UAW*, 497 F.3d at 631; *Todd v. Retail Concepts, Inc.*, No. 3:07-0788, 2008 U.S. Dist. LEXIS 117126, at *12-*13 (M.D. Tenn. Aug. 22, 2008); *Williams*, 720 F.2d at 921; *Telectronics*, 137 F. Supp. 2d at 1008.  Courts have consistently utilized these factors in considering the fairness, reasonableness, and adequacy of proposed class action settlements.  *See, e.g.*, *Williams*, 720 F.2d at 922; *Granada Invs., Inc. v. DWG Corp.*, 823 F. Supp. 448, 453 (N.D. Ohio 1993) (citing *Bronson v. Bd. of Educ.*, 604 F. Supp. 68, 73 (S.D. Ohio 1984)).

Courts have emphasized that these factors should not be applied in a "formalistic" fashion.  *Whitford v. First Nationwide Bank*, 147 F.R.D. 135, 140 (W.D. Ky. 1992) ("A class action settlement cannot be measured precisely against any particular set of factors.").  Moreover, courts have consistently held that the function of a judge in reviewing a settlement is not to rewrite the

- 8 -

915672_1

settlement agreement reached by the parties or to try the case by resolving issues intentionally left unresolved.  *See, e.g.*, *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981) ("Courts judge the fairness of a proposed compromise by weighing the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement.  They do not decide the merits of the case or resolve unsettled legal questions.") (citation omitted).

The view of experienced counsel favoring the settlement is entitled to great weight.  *Kogan v. AIMCO Fox Chase, L.P.*, 193 F.R.D. 496, 501 (E.D.  Mich.  2000) (citing *Bronson*, 604 F. Supp. at 73).  A court should "defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs." *Williams*, 720 F.2d at 922-23; *see also Kogan*, 193 F.R.D. at 501.  Where, as here, a settlement is endorsed as fair by experienced and sophisticated counsel after rigorous arm's-length negotiations, there is a strong initial presumption that the compromise is fair and reasonable.  Importantly, the Plaintiffs also approve the Settlement.  Wyman Decl., ¶10.

When examined under the applicable criteria, this Settlement is a highly favored result for the Class.  Plaintiffs' counsel believe that there are serious questions as to whether a more favorable monetary result against Defendants could or would be attained after summary judgment, trial, and the inevitable post-trial motions and appeals.  Wyman Decl., ¶¶5, 7-8, 41-50.  The Settlement achieves a substantial and certain recovery for Class Members and is unquestionably superior to the distinct possibility that were the Litigation to proceed to trial, there could be no recovery at all.  Analysis of the relevant factors demonstrates that the Settlement merits this Court's final approval.

**B.      The Settlement Satisfies the Criteria for Final Approval**

**1.      The Likelihood of Success on the Merits**

One of the factors courts consider in approving a class action settlement is the plaintiff's likelihood of success on the merits, balanced against the amount and form of relief offered in settlement.  *Williams*, 720 F.2d at 922.  As in every complex case of this kind, Plaintiffs faced

- 9 -

formidable obstacles to recovery if litigation were to continue.  The principal claims in this Litigation are based upon §10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder. While Plaintiffs' counsel believe that they could prove the claims asserted, there is nevertheless a great deal of risk present and there were certainly no guarantee that they would prevail at trial and ultimately collect on a larger judgment after trial and subsequent appeals.  Post-PSLRA rulings make it clear that the risk of no recovery has increased exponentially since the PSLRA was adopted in 1995.[9]

Securities litigation generally involves complex issues of fact and law, and this case is no exception.  For example, to establish liability under §10(b), Plaintiffs bear the burden of proving, *inter alia*, that Defendants participated in the public dissemination of false or misleading information, that the information was material to investors in determining whether to invest in Diebold stock, that the information impacted the market price of the stock, caused damage to the Class, and that Defendants acted with scienter.  *In re Comshare, Inc. Sec. Litig.*, 183 F.3d 542, 548 (6th Cir. 1999).  Further litigation to establish both liability and damages posed a significant threat to any recovery for the Class.

Plaintiffs' case centered on allegations that prior to and during the Class Period (June 30, 2005 through January 14, 2008), the Diebold Defendants engaged in fraudulent accounting practices to inflate earnings to meet analysts' forecasts.  These fraudulent practices included: (i) improper use of "bill-and-hold" accounting; (ii) improper revenue recognition with respect to a lease agreement

---

[9]    *See In re Ikon Office Solutions, Inc.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000) (acknowledging that "securities actions have become more difficult from a plaintiff's perspective in the wake of the PSLRA").  The court in *Ikon* went on to indicate a number of additional factors that have made litigation of securities class actions more difficult.  "The Act imposes many new procedural hurdles, including restrictions on the types of plaintiffs who may serve as representatives and requiring increased court intervention in the selection of lead counsel.  It also substantially alters the legal standards applied to securities fraud claims in ways that generally benefit defendants rather than plaintiffs."  *Id*. at 194-95 (citation omitted).

915672_1

subject to an undisclosed buy-back agreement; (iii) manipulating reserves and accruals; (iv) improperly delaying and capitalizing expenses; and (v) improperly inflating the value of used inventory. The Second Amended Complaint alleges that KPMG violated §10(b) of the Exchange Act by continuing to issue unqualified audit opinions falsely certifying that Diebold's financial statements were presented "fairly" and in compliance with Generally Accepted Accounting Principles ("GAAP"), even after discovering the Diebold Defendants' alleged fraudulent accounting practices. Plaintiffs also alleged that these fraudulent practices rendered the Company's publicly reported financial results – as well as KPMG's audits thereof – materially misleading. In September 2008, Diebold restated each of its quarterly and yearly financial statements for the period 2003 through 2006, and the first quarter of 2007. The accounting manipulations at issue are complex and Plaintiffs would have to prove that Defendants recklessly violated GAAP. Because GAAP is not "'a canonical set of rules that will ensure identical accounting treatment of identical transactions by all accountants'" the determination of many of the accounting issues would be subject to expert testimony. *See In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*, 396 F. Supp. 2d 1178, 1186 (D. Colo. 2004) (citation omitted). Indeed, "GAAP generally tolerates a range of reasonable treatments, leaving the choice among reasonable treatments to management." *Id.* Plaintiffs further alleged that as a result of these material misstatements and omissions, Diebold stock traded at artificially inflated prices, and that, when the truth became known, the stock, which traded as high as $54.50 during the Class Period, fell to $24.71 per share on January 15, 2008, causing losses to the Class.

Plaintiffs and Lead Counsel considered the significant risks associated with proving the claims alleged in the Second Amended Complaint prior to determining that settlement would be in the best interest of the Class. Specifically, Defendants argued that the statute of limitations foreclosed some if not all of Plaintiffs' claims; that Plaintiffs would not be able to prove scienter; and that Plaintiffs could not prove that the Class suffered any losses, insofar as the restated financials

arguably increased net income and earnings per share for certain periods during the Class Period. While Plaintiffs dispute Defendants' contentions, there was a substantial risk of recovering limited or no damages for the Class if the jury agreed with even one of the arguments negating or substantially narrowing liability or damages made by Defendants. *See Delphi*, 248 F.R.D. at 496 (discussing "the risk that Defendants could prevail with respect to certain legal or factual issues, which could result in the reduction or elimination of Plaintiffs' potential recoveries").

Although Plaintiffs believe that they would present sufficient evidence to support their claims, they were aware that Defendants would present counter-evidence and other substantial obstacles to obtaining a judgment in their favor after trial. Moreover, there was no certainty that additional discovery would tend to support or disprove Plaintiffs' allegations. As discussed in the Wyman Declaration, Defendants attempted to thwart Plaintiffs' ability to conduct meaningful discovery by, among other things, claiming that a substantial amount of the discovery sought was not relevant, was burdensome and protected by privilege. Wyman Decl., ¶37. Moreover, Plaintiffs would have to rely on significant testimony from current and former Diebold and KPMG employees, all of whom would be testifying about events that occurred, in some instances, more than ten years ago. As a result of the significant time between the events of interest and any deposition or trial, the ability as well as the willingness of many witnesses to testify completely about the events would be impaired. In addition, due to the length of time of the events at issue, many of the documents Plaintiffs sought could either have been lost or otherwise unavailable for production.

Assuming the Litigation had proceeded through discovery to summary judgment and/or trial, Defendants would almost certainly have contended (as they had in connection with prior motions) that: (i) Plaintiffs' claims were untimely; (ii) that liability could not be demonstrated because Plaintiff could not demonstrate all of the elements of their §10(b) claim, including scienter and loss causation; and (iii) that without establishing a violation of §10(b) there would be no predicate

- 12 -

liability under §20(a). Specifically, Defendants would have been expected to argue at summary judgment and/or trial that a reasonably diligent plaintiff would have discovered its claim for securities fraud more than two years prior to the filing of the original complaint; that Plaintiffs could not demonstrate that any of the alleged false or misleading statements or omissions were made with fraudulent intent; that the accounting errors alleged in the Second Amended Complaint resulted in the understatement of Diebold's financial condition, which could not have inflated Diebold's stock price; that the alleged misstatements were immaterial as a matter of law in that the disclosures alleged in the Second Amended Complaint did not cause statistically significant downward movements in the price of Diebold's securities; and that the truth about Diebold's financial statements was already known to the market during the Class Period. Moreover, unlike in prior proceedings, the Court or jury would have been permitted to weigh the evidence at these later stages of the Litigation, which potentially would have benefitted Defendants had these or other arguments been presented later in the Litigation. *See, e.g.*, *In re JDS Uniphase Corp. Sec. Litig.*, No. C-02-1486 CW (EDL), 2007 WL 4788556 (N.D. Cal. Nov. 27, 2007) (jury verdict for defendants).

One of the most difficult issues going forward would be Plaintiffs' ability to prove scienter, *i.e.*, that Defendants acted with knowledge of or with recklessness as to the alleged falsity of their statements and omissions. A defendant's state of mind in a securities case is often the most difficult element of proof and one which is rarely supported by direct evidence such as an admission. Thus, it was quite possible that Plaintiffs would procure documentary and testimonial evidence from all Defendants and others with knowledge about the relevant facts, yet not be able to adduce sufficient evidence to satisfy their burden of proof on this issue at trial. Defendants had previously argued, and would be expected to argue again at summary judgment and/or trial, that Plaintiffs could not demonstrate scienter because they could not show Defendants acted deliberately or recklessly.

- 13 -

Even if Plaintiffs were successful in establishing liability, they faced substantial risks in proving loss causation and damages. There is no question that Defendants would vigorously contest loss causation if litigation continued. Plaintiffs recognize that Defendants would present expert testimony purportedly demonstrating the absence of a causal link between the various stock price declines and those disclosures. Defendants had contended in the past, and would undoubtedly argue at summary judgment and/or trial, that the decline in the price of Diebold securities at the end of the Class Period was the result of non-fraudulent factors, and that other disclosures during the Class Period, which revealed that both the SEC and the DOJ were investigating potential accounting improprieties at Diebold, were not accompanied by a significant change in the price of Diebold's securities. The United States Supreme Court's decision in *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 346 (2005), and subsequent cases interpreting *Dura*, have made proving loss causation even more difficult and uncertain than in the past. *See, e.g.*, *In re Tyco Int'l, Ltd.*, 535 F. Supp. 2d 249, 260 (D.N.H. 2007) ("Proving loss causation would be complex and difficult."). Three examples illustrate this point. The Eleventh Circuit in *Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012), affirmed a lower court ruling that granted defendants' motion for judgment as a matter of law based on plaintiff's failure to prove loss causation, thereby overturning a jury verdict in plaintiff's favor. The Eleventh Circuit also upheld summary judgment in favor of defendants on loss causation grounds in a case litigated since 2001. *See Phillips v. Scientific-Atlanta, Inc.*, 489 Fed. Appx. 339 (11th Cir. 2012). In *In re Oracle Corp. Sec. Litig.*, No. C 01-00988 SI, 2009 U.S. Dist. LEXIS 50995 (N.D. Cal. June 16, 2009), *aff'd*, 627 F.3d 376 (9th Cir. 2010), the court granted summary judgment in defendants' favor holding that shareholder plaintiffs failed to present sufficient evidence to establish loss causation under Rule 10b-5.

The amount of damages incurred by Class Members would also have been hotly contested at trial. Damages in securities class action cases are always difficult to prove. At trial, the damage

assessments of Plaintiffs' and Defendants' experts were sure to vary substantially, and in the end, this crucial element at trial would have been reduced to a "battle of the experts." *Tyco*, 535 F. Supp. 2d at 260-61 ("even if the jury agreed to impose liability, the trial would likely involve a confusing 'battle of the experts' over damages").  The reaction of a jury to competing expert testimony is highly unpredictable and in such a battle, Plaintiffs' counsel recognize the possibility that a jury could be swayed by convincing experts for the Defendants, and find that there were no damages or only a fraction of the amount of damages Plaintiffs contended.[10]

Even if Plaintiffs prevailed and obtained a substantial judgment after trial, there is little doubt that Defendants would have filed post-trial motions and if unsuccessful would appeal the verdict and award.  The post-trial motions and appeals process would have likely spanned several years, during which the Class would have received no distribution on any damage award.  In addition, an appeal of any verdict would carry the risk of reversal, in which case the Class would receive no recovery after having prevailed on the claims at trial.

Finally, even with a judgment in hand, in today's corporate environment with the number of recent bank failures and corporate debacles such as Lehman Brothers, JP Morgan, Enron, Tyco, and WorldCom, there is no guarantee that a significant judgment entered years down the road would be collectable.  Therefore, the amount of damages the Class would actually recover even if successful at trial and on appeal is uncertain.

---

[10]   *See, e.g.*, *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 744-45 (S.D.N.Y. 1985) (approving settlement where "it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which damages would be found to have been caused by actionable, rather than the myriad nonactionable factors such as general market conditions"), *aff'd*, 798 F.2d 35 (2d Cir. 1986); *In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 01695 (CM), 2007 U.S. Dist. LEXIS 85629, at *29 (S.D.N.Y. Nov. 7, 2007) ("The jury's verdict with respect to damages would depend on its reaction to the complex testimony of experts, a reaction which at best is uncertain.").

2.    **The Complexity, Expense, and Likely Duration of the Litigation**

The complexity, expense, and likely duration of the litigation is another factor considered in determining the fairness of a settlement. *Telectronics*, 137 F. Supp. 2d at 1013; *In re Art Materials Antitrust Litig.*, 100 F.R.D. 367, 372 (N.D. Ohio 1983). *See also Delphi*, 248 F.R.D. at 497 ("Courts have consistently held that the expense and possible duration of litigation are major factors to be considered in evaluating the reasonableness of a settlement."). There is no doubt that this securities class action involves complex factual and legal issues. While courts have long recognized that "stockholder litigation is notably difficult and notoriously uncertain," *Lewis v. Newman*, 59 F.R.D 525, 528 (S.D.N.Y. 1973), since the enactment of the PSLRA, "securities actions have become more difficult from a plaintiff's perspective in the wake of the PSLRA." *Ikon*, 194 F.R.D. at 194; *see also Bryant v. Avado Brands, Inc.*, 100 F. Supp. 2d 1368, 1377 (M.D. Ga. 2000), *rev'd on other grounds sub nom. Bryant v. Dupree*, 252 F.3d 1161 (11th Cir. 2001); *New Eng. Health Care Emps. Pension Fund v. Fruit of the Loom, Inc.*, 234 F.R.D. 627, 631 (W.D. Ky. 2006) ("'Securities class actions are often difficult and . . . uncertain.'") (citation omitted). Indeed, the Fifth Circuit in *Goldstein v. MCI WorldCom*, 340 F.3d 238 (5th Cir. 2003), affirmed a dismissal with prejudice of a securities fraud class complaint against Bernard Ebbers and WorldCom involving a massive securities fraud with a $685 million write-off of accounting receivables for which Ebbers was later convicted.

If not for this Settlement, the case would have continued to be fiercely contested by all parties. Defendants have demonstrated a commitment to defend the case through and beyond trial, if necessary, and they are represented by well-respected and highly-capable counsel. The expense of continued litigation would be substantial. The parties would have had to complete a lengthy, extensive, and time-consuming discovery program, involving a review and analysis of documents from Defendants and non-parties and an extensive deposition program. Experts would have to be

- 16 -

designated and expert discovery conducted.  Inevitably, Defendants would have filed motion(s) for summary judgment and a motion to decertify the Class (should a class have been certified).

Assuming Plaintiffs' claims survived summary judgment, a pre-trial order would have to be prepared, proposed jury instructions would have to be submitted, and motions *in limine* would have to be filed and argued.  Moreover, any trial involving some or all of the Defendants would likely run several weeks, and involve numerous attorneys, witnesses, experts, and the introduction of voluminous documentary and deposition evidence, vigorously contested motions, and the expenditure of enormous amounts of judicial and counsel resources.  Even if successful at trial, appeals would be virtually assured.[11]  Taking into account the likelihood of appeal, absent the Settlement, the Litigation likely would have continued for years, despite the efforts of the Court and the parties to speed the process, and would have caused Class Members who suffered economic losses between 2005 and 2008 to wait years longer for a resolution of their claims.  *See In re Chambers Dev. Sec. Litig.*, 912 F. Supp. 822, 837 (W.D. Pa. 1995) ("It is safe to say, in a case of this complexity, the end of that road might be miles and years away.").  "To most people, a dollar today is worth a great deal more than a dollar ten years from now."  *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 284 (7th Cir. 2002).

Even if the Class were to recover a larger judgment after trial, which is certainly not guaranteed, the additional delay, through summary judgment, trial, post-trial motions, and the appellate process, would deny the Class any recovery for years.  The Settlement secures a substantial and certain benefit for the Class in this highly complex and contested action, undiminished by further expenses, and without the delay, risk, and uncertainty of continued litigation.  *See, e.g., In re*

---

[11]  *See In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 373-74 (S.D. Ohio 2006) (explaining "the difficulty Plaintiffs would encounter in proving their claims, the substantial litigation expenses, and a possible delay in recovery due to the appellate process, provide justifications for this Court's approval of the proposed Settlement").

*Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 318 (3d Cir. 1998) (settlement was favored where "the trial of this class action would be a long, arduous process requiring great expenditures of time and money on behalf of both the parties and the court").

### 3.     The Stage of Proceedings and Extent of Discovery

To ensure that a plaintiff had access to sufficient information to evaluate its case and to assess the adequacy of the settlement proposal, the stage of the proceedings and the extent of discovery is another factor which is considered in determining the fairness of the settlement. *Telectronics*, 137 F. Supp. 2d at 1015; *Kogan*, 193 F.R.D. at 502.  In this Litigation, both the knowledge of Plaintiffs' counsel and the proceedings themselves reached a stage where an intelligent evaluation of the strengths and weaknesses of the Class' claims and the propriety of the Settlement could be made.  *In re Packaged Ice Antitrust Litig.*, No. 08-MDL-01952, 2011 U.S. Dist. LEXIS 150427, at *58, *60 (E.D. Mich. Dec. 13, 2011) (concluding "the absence of extensive discovery does not weigh against final approval" of the settlement where the parties had proceeded with document discovery but the case was still in "a relatively early stage . . . before class certification and before the initiation of discovery in earnest").

As set forth above and in the Wyman Declaration, this case has been vigorously litigated from start to finish.  Prior to settlement, Plaintiffs' counsel, among other things, conducted an extensive and thorough investigation of the facts alleged; reviewed and analyzed an enormous quantity of publicly-available information about Defendants and the allegations; drafted and filed detailed complaints; and consulted with experienced experts.   The briefing and orders on Defendants' motions to dismiss highlighted the factual and legal issues that were in dispute.  The parties also participated in hard-fought settlement negotiations, including mediation with Judge Phillips, where the strengths and weaknesses of the parties' respective claims and defenses were fully explored.  Moreover, prior to the mediation, the parties exchanged detailed mediation

- 18 -

statements and responses to Judge Phillips' questions which further highlighted the legal and factual issues in dispute.

There is no question that Plaintiffs and their counsel were in an excellent position to evaluate the strengths and weaknesses of the claims asserted and defenses raised by Defendants, as well as the substantial risks of continued litigation and the propriety of settlement.  Having sufficient information to properly evaluate the case, Plaintiffs have settled the Litigation on terms highly favorable to the Class without the substantial expense, risk, and uncertainty of continued litigation.

### 4.    The Settlement Is the Result of "Arm's-Length" Negotiations Among Competent and Experienced Counsel

In appraising the fairness of a proposed settlement, a court is entitled to rely heavily on the opinion of competent counsel. *Williams*, 720 F.2d at 922-23; *Telectronics*, 137 F. Supp. 2d at 1015-16; *Art Materials*, 100 F.R.D. at 371.  In fact, "[i]n deciding whether a proposed settlement warrants approval, the informed and reasoned judgment of plaintiffs' counsel and their weighing of the relative risks and benefits of protracted litigation are entitled to great deference."  *Thacker v. Chesapeake Appalachia, L.L.C.*, 695 F. Supp. 2d 521, 532 (E.D. Ky. 2010), *aff'd sub nom. Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235 (6th Cir. 2011).  This is especially true where the stage of the proceedings indicates that counsel and the court are fully capable of evaluating the merits of plaintiffs' case and the probable course of future litigation.  *See Armstrong v. Gallia Metro. Hous. Auth.*, No. 2:98-CV-373, 2001 WL 1842452 at *4 (S.D. Ohio Apr. 23, 2001).  As set forth above and in the Wyman Declaration, the knowledge of Plaintiffs' counsel and the proceedings themselves reached a stage where Plaintiffs' counsel could make an intelligent evaluation of the strengths and weaknesses of the Class' claims and the propriety of settlement.

In evaluating the Settlement and the opinion of counsel, the Court may examine the negotiating process that took place between the parties to confirm that there was no collusion in reaching the Settlement.  The Settlement is the product of hard fought arm's-length negotiations

- 19 -

between the parties with the substantial assistance of Judge Phillips.  *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (a "mediator's involvement in . . . settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure").   During settlement negotiations, Plaintiffs and their counsel made it very clear that while they were prepared to fairly assess the strengths and weaknesses of the claims asserted, they would (and did) continue to litigate rather than settle for less than fair value.

On March 12, 2013, the parties participated in mediation with Judge Phillips.  The parties, however, were unable to reach agreement and litigation continued.  Prior to the March 12 mediation, the parties drafted and exchanged detailed mediation statements setting out the parties' respective positions with documentary evidence supporting their positions as well as responses to questions raised by Judge Phillips following his review of the parties' mediation statements.  Wyman Decl., ¶51.  While the parties made progress at the March 12 mediation, no agreement was reached, litigation continued and the parties continued to negotiate with the assistance of Judge Phillips.  Over the course of the next three months, the parties exchanged numerous demands and counter-offers. Wyman Decl., ¶52.  Ultimately an agreement-in-principle was reached with the Diebold Defendants on June 17, 2013, and with KPMG on June 22, 2013.  *Id.*

As a result of the negotiation process, Plaintiffs' counsel - highly experienced in securities class action litigation - having carefully considered and evaluated, *inter alia*, the relevant legal authorities and evidence to support the claims asserted against Defendants, the likelihood of prevailing on these claims, and the risk, expense, and duration of continued litigation, have made a considered judgment that the Settlement for $31.6 million is not only fair and reasonable, but under the circumstances is an excellent result for the Class.

### 5.    The Reaction of the Class

To further support approval of a settlement, courts have also looked to the reaction of the class to the settlement.  *Brotherton*, 141 F. Supp. 2d at  906.  Of course, "[t]he fact that some class members object to the Settlement does not by itself prevent the court from approving the agreement."  *Id*.  "'A certain number of . . . objections are to be expected in a class action.'"  *Thacker*, 695 F. Supp. 2d at 533 (citation omitted).  Moreover, "a relatively small number of class members who object is an indication of a settlement's fairness."  *Brotherton*, 141 F. Supp. 2d at 906 (citing 2 Herbert Newberg & Alba Conte, *Newberg on Class Actions* §11.48 (3d ed. 1992)).

In this case, copies of the Notice were mailed to over 120,800 potential Members of the Class and their nominees.  Sylvester Decl., ¶¶3-10.  The Summary Notice was also published in *Investor's Business Daily*, the *Akron Beacon Journal*, the *Canton Repository* and over the *Business Wire*.  In addition, the Notice, Proof of Claim and Release form, the Stipulation, and the Preliminary Approval Order were posted on the Claims Administrator's website.  *Id.*, ¶¶12-13.  While the deadline for filing objections – March 5, 2014- has not yet expired, to date, no Class Member has objected to any aspect of the Settlement, the Plan of Allocation of Settlement proceeds, or counsel's request for an award of attorneys' fees and expenses.

### 6.    The Public Interest

"'[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources.'"  *Hyland v. HomeServices of Am., Inc.*, No. 3:05-CV-612-R, 2012 U.S. Dist. LEXIS 61994, at *23 (W.D. Ky. May 3, 2012) (citations omitted).  As discussed above, the Settlement provides a substantial recovery to a large class of people who purchased Diebold's publicly traded securities in the form of a settlement fund of $31.6 million, plus interest, and demonstrates the viability of the private enforcement of the federal securities laws.  *See Tellabs, Inc.*

- 21 -

*v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007) (recognizing "that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions"). The Settlement puts an end to contentious and protracted litigation, which absent settlement would have likely continued for many more years in this Court or in the Court of Appeals despite the best efforts of the parties and the Court to speed up the process. *See Broadwing*, 252 F.R.D. at 376 ("[T]here is certainly a public interest in settlement of disputed cases that require substantial federal judicial resources to supervise and resolve.").

## V. THE PLAN OF ALLOCATION OF SETTLEMENT PROCEEDS IS FAIR AND REASONABLE AND SHOULD BE APPROVED

The Notice contains the Plan of Allocation of Settlement proceeds, detailing how the Settlement proceeds are to be divided among claiming Class Members. A trial court has broad discretion in approving a plan of allocation. *See Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 328 (3d Cir. 2011), *cert. denied*, 132 S. Ct. 1876 (2012); *In re Chicken Antitrust Litig.*, 810 F.2d 1017, 1019 (11th Cir. 1987). The test is simply whether the proposed plan, like the settlement itself, is fair, reasonable, and adequate. *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 132 (S.D.N.Y.), *aff'd*, 117 F.3d 721 (2d Cir. 1997); *Walsh v. Great Atl. & Pac. Tea Co.*, 726 F.2d 956, 964 (3d Cir. 1983) ("The court's principal obligation is simply to ensure that the fund distribution is fair and reasonable."). Equity does not require, however, that the distribution be on a *pro rata* basis. *See UAW*, 497 F.3d at 629; *Rotuna v. W. Customer Mgmt. Grp., LLC*, No. 4:09CV1608, 2010 U.S. Dist. LEXIS 58912, at *17 (N.D. Ohio June 15, 2010).

In determining whether a proposed plan is fair, courts look primarily to the opinion of counsel. *See PaineWebber*, 171 F.R.D. at 133 ("[T]he adequacy of an allocation plan turns on whether counsel has properly apprised itself of the merits of all claims, and whether the proposed apportionment is fair and reasonable in light of that information."); *see also White v. NFL*, 822 F. Supp. 1389, 1420 (D. Minn. 1993) (stating that "[t]he court . . . affords considerable weight to the

- 22 -

opinion of experienced and competent counsel that is based on their informed understanding of the legal and factual issues involved" in approving distribution of settlement proceeds). Here, working with their damage expert, Plaintiffs' counsel developed the Plan of Allocation of Settlement proceeds that reflects Plaintiffs' damage theory of the case in a straightforward manner and will result in a fair distribution of the available proceeds among Class Members.

## VI.  CONCLUSION

For the foregoing reasons, Plaintiffs and their counsel respectfully request that the Court approve the Settlement and the Plan of Allocation of Settlement proceeds as fair, reasonable, and adequate and in the best interests of the Class.

DATED:  February 19, 2014   Respectfully submitted,

LANDSKRONER • GRIECO • MERRIMAN, LLC
JACK LANDSKRONER (0059227)
1360 West 9th Street, Suite 200
Cleveland, OH  44113
Telephone:  216/522-9000
216/522-9007 (fax)

Liaison Counsel

ROBBINS GELLER RUDMAN & DOWD LLP
DEBRA J. WYMAN
SUSANNAH R. CONN

     s/ Debra J. Wyman
    DEBRA J. WYMAN

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

Lead Counsel for Plaintiff

- 23 -

915672_1

CERTIFICATE OF SERVICE

I hereby certify that on February 19, 2014, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on February 19, 2014.

s/ Debra J. Wyman
DEBRA J. WYMAN

ROBBINS GELLER RUDMAN
    & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-3301
Telephone:  619/231-1058
619/231-7423 (fax)

E-mail:  DebraW@rgrdlaw.com

## Mailing Information for a Case  1:10-cv-01461-BYP Louisiana Municipal Police Employees Retirement System v. KPMG LLP et al

### Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Rajeev K. Adlakha**
  rkadlakha@vorys.com,smromanin@vorys.com

- **Jeffrey D. Baltruzak**
  jbaltruzak@mwe.com

- **Jonathan R. Barr**
  jbarr@bakerlaw.com

- **Fritz E. Berckmueller**
  fberckmueller@calfee.com,mkucharson@calfee.com,ezell@calfee.com

- **Terry M. Brennan**
  tbrennan@bakerlaw.com,kwangsgard@bakerlaw.com,fharker@bakerlaw.com,gcurbelo@bakerlaw.com,bhlitdocket@bakerlaw.com

- **John J. Carney**
  jcarney@bakerlaw.com

- **Susannah R. Conn**
  sconn@rgrdlaw.com

- **Virginia A. Davidson**
  vdavidson@calfee.com

- **Francesca M. Harker**
  fharker@bakerlaw.com

- **Geoffrey M. Johnson**
  gjohnson@scott-scott.com,jguglielmo@scott-scott.com,tcrockett@scott-scott.com,dbroggi@scott-scott.com,efile@scott-scott.com

- **Jack Landskroner**
  jack@lgmlegal.com,debra@lgmlegal.com

- **Jeffrey J. Lauderdale**
  jlauderdale@calfee.com,dmichalski@calfee.com

- **Jeffrey D. Light**
  jeffl@rgrdlaw.com,jstark@rgrdlaw.com

- **Kristin S.M. Morrison**
  kmorrison@jonesday.com,hjhockenberry@jonesday.com

- **Adrienne F. Mueller**
  afmueller@jonesday.com,nmadamczyk@jonesday.com

- **Danielle S. Myers**
  dmyers@rgrdlaw.com

- **John M. Newman , Jr**
  jmnewman@jonesday.com,nmadamczyk@jonesday.com,pgarver@jonesday.com

- **John D. Parker**
  jparker@bakerlaw.com,lreece@bakerlaw.com

- **Geoffrey J. Ritts**
  gjritts@jonesday.com,nmadamczyk@jonesday.com

- **Darren J. Robbins**
  e_file_sd@rgrdlaw.com

- **Jeffrey A. Rossman**
  jrossman@mwe.com,deberry@mwe.com

- **Steven S. Scholes**
  sscholes@mwe.com

- **William P. Schuman**
  wschuman@mwe.com,bolvera@mwe.com

- **David J. Tocco**
  djtocco@vorys.com,kshowe@vorys.com

- **Michael N. Ungar**
  mungar@ulmer.com,mcrick@ulmer.com

- **Daniel R. Warren**
  dwarren@bakerlaw.com

- **Robert N. Webner**
  rnwebner@vorys.com

- **Debra J. Wyman**
  debraw@rgrdlaw.com,stremblay@rgrdlaw.com

- **Melissa L. Zujkowski**
  mzujkowski@ulmer.com,rbrumfield@ulmer.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
Phillip            A. Brown
Vorys, Sater, Seymour & Pease - Columbus
52 East Gay Street
P.O. Box 1008
Columbus, OH 43216-1008

Kathryn            E. Schill
INVALID ADDRESS - Baker & Hostetler - Cleveland
3200 PNC Center
1900 East Ninth Street
Cleveland, OH 44114
```