UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF OHIO

EASTERN DIVISION

| | | |
|---|---|---|
| LOUISIANA MUNICIPAL POLICE EMPLOYEES RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated, | ) ) ) ) ) | No. 1:10-cv-01461-BYP <u>CLASS ACTION</u> Judge Benita Y. Pearson |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| KPMG, LLP, et al., | ) ) | |
| Defendants. | ) ) ) ) | |

MEMORANDUM OF LAW IN SUPPORT OF APPLICATION OF PLAINTIFFS' COUNSEL
FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES

LANDSKRONER • GRIECO • MERRIMAN, LLC
JACK LANDSKRONER (0059227)
1360 West 9th Street, Suite 200
Cleveland, OH 44113
Telephone: 216/522-9000
216/522-9007 (fax)

Liaison Counsel

ROBBINS GELLER RUDMAN
  & DOWD LLP
DEBRA J. WYMAN
SUSANNAH R. CONN
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

Lead Counsel for Plaintiff

916290_1

## TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ..................................................................................................... 1

II.  AWARD OF ATTORNEYS' FEES............................................................................ 4

    A.  Plaintiffs' Counsel Are Entitled to a Fee From the Common Fund They Obtained........................................................................................................... 4

    B.  The Court Should Award Attorneys' Fees Using the Percentage Approach .......... 4

    C.  The Requested Fee Award Is Well Within the Applicable Range of Percentage-of-Fund Awards ........................................................................... 6

    D.  Fee Awards in the Sixth Circuit .................................................................... 8

III.  APPLICATION OF THE *RAMEY* FACTORS ......................................................... 9

    A.  The Value of the Benefits Achieved................................................................ 9

    B.  Public Policy Considerations....................................................................... 10

    C.  The Contingent Nature of the Fee ............................................................... 11

    D.  The Diligent Prosecution of the Litigation ................................................. 14

    E.  The Complexity of the Litigation ................................................................ 15

    F.  The Quality of the Representation............................................................... 17

IV.  PLAINTIFFS' COUNSEL'S EXPENSES ARE REASONABLE AND WERE NECESSARILY INCURRED TO ACHIEVE THE BENEFIT OBTAINED ................. 18

V.  CONCLUSION ...................................................................................................... 20

# TABLE OF AUTHORITIES

**Page**

## CASES

*Alaska Elec. Pension Fund v. Flowserve Corp.*,
572 F.3d 221 (5th Cir. 2009) .................................................................. 1

*Anixter v. Home-Stake Prod. Co.*,
77 F.3d 1215 (10th Cir. 1996) .............................................................. 14

*Basic Inc. v. Levinson*,
485 U.S. 224 (1988) ............................................................................ 10

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
472 U.S. 299 (1985) ....................................................................... 4, 10

*Beach v. Healthways Inc.*,
No. 3:08-cv-00569, slip op.
(M.D. Tenn. Sept. 27, 2010) ................................................................. 7

*Behrens v. Wometco Enters., Inc.*,
118 F.R.D. 534 (S.D. Fla. 1988),
*aff'd*, 899 F.2d 21 (11th Cir. 1990) ....................................................... 9

*Blum v. Stenson*,
465 U.S. 886 (1984) ......................................................................... 5, 7

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980) ............................................................................. 4

*Bowling v. Pfizer, Inc.*,
922 F. Supp. 1261 (S.D. Ohio 1996) .................................................... 6

*Bryant v. Avado Brands, Inc.*,
100 F. Supp. 2d 1368 (M.D. Ga. 2000), *rev'd on*
*other grounds sub nom. Bryant v. Dupree*,
252 F.3d 1161 (11th Cir. 2001) .......................................................... 12

*Cent. R.R. & Banking Co. v. Pettus*,
113 U.S. 116 (1885) ............................................................................. 5

*Churchill Vill., L.L.C. v. GE*,
361 F.3d 566 (9th Cir. 2004) .............................................................. 16

*Goldstein v. MCI WorldCom*,
340 F.3d 238 (5th Cir. 2003) .............................................................. 12

916290_1

**Page**

*Harris v. Marhoefer,*
    24 F.3d 16 (9th Cir. 1994) ................................................................. 19

*Hensley v. Eckerhart,*
    461 U.S. 424 (1983) ........................................................................... 9

*Hubbard v. BankAtlantic Bancorp, Inc.,*
    688 F.3d 713 (11th Cir. 2012) ......................................................... 9, 13

*In re Advanced Lighting Techs., Inc. Sec. Litig.,*
    No. 1:99CV836, slip op.
    (N.D. Ohio Jan. 17, 2003) ................................................................. 7

*In re Apple Computer Sec. Litig.,*
    No. C-84-20148(A)-JW, 1991 U.S. Dist. LEXIS 15608
    (N.D. Cal. Sept. 6, 1991) ................................................................. 14

*In re Cendant Corp. Litig.,*
    264 F.3d 201 (3d Cir. 2001) .............................................................. 3

*In re Cendant Corp. Sec. Litig.,*
    109 F. Supp. 2d 285 (D.N.J. 2000) ................................................... 3

*In re Comshare, Inc. Sec. Litig.,*
    183 F.3d 542 (6th Cir. 1999) ........................................................... 12

*In re Cont'l Ill. Sec. Litig.,*
    962 F.2d 566 (7th Cir. 1992) ........................................................... 11

*In re Delphi Corp. Sec.,*
    248 F.R.D. 483 (E.D. Mich. 2008) ................................................ 9, 18

*In re Direct Gen. Corp. Sec. Litig.,*
    No. 3:05-0077, slip op.
    (M.D. Tenn. July 20, 2007) .............................................................. 7

*In re Global Crossing Sec. & ERISA Litig.,*
    225 F.R.D. 436 (S.D.N.Y. 2004) ..................................................... 18

*In re Ikon Office Solutions, Inc.,*
    194 F.R.D. 166 (E.D. Pa. 2000) .................................................. 16, 17

*In re JDS Uniphase Corp. Sec. Litig.,*
    No. C-02-1486-CW(EDL), 2007 WL 4788556
    (N.D. Cal. Nov. 27, 2007) ................................................................ 13

**Page**

*In re Lupron(R) Mktg. & Sales Practices Litig.*,
MDL No. 1430, 2005 U.S. Dist. LEXIS 17456
(D. Mass. Aug. 17, 2005) ..................................................................................13

*In re Nat'l Century Fin. Enters., Inc. Inv. Litig.*,
No. 2:03-md-1565, 2009 U.S. Dist. LEXIS 45790
(S.D. Ohio May 27, 2009) ..................................................................................7

*In re Old CCA Sec. Litig.*,
No. 3:99-0458, 2001 U.S. Dist. LEXIS 21942
(M.D. Tenn. Feb. 9, 2001) ..................................................................................7

*In re Oracle Corp. Sec. Litig.*,
No. C 01-00988 SI, 2009 U.S. Dist. LEXIS 50995
(N.D. Cal. June 16, 2009), *aff'd*, 627 F.3d 376 (9th Cir. 2010) .............................13

*In re Packaged Ice Antitrust Litig.*,
No. 08-MDL-01952, 2011 U.S. Dist. LEXIS 150427
(E.D. Mich. Dec. 13, 2011) ..................................................................................7

*In re Prudential-Bache Energy Income P'ships Sec. Litig.*,
No. 888, 1994 U.S. Dist. LEXIS 6621
(E.D. La. May 18, 1994)..................................................................................11

*In re Sirrom Capital Corp. Sec. Litig.*,
No. 3-98-0643, slip op.
(M.D. Tenn. Feb. 4, 2000) ..................................................................................7

*In re Telectronics Pacing Sys.*,
186 F.R.D. 459 (S.D. Ohio 1999), *rev'd on
other grounds*, 221 F.3d 870 (6th Cir. 2000)..................................................5

*In re Xcel Energy, Inc.*,
364 F. Supp. 2d 980 (D. Minn. 2005)..................................................13, 14

*J. I. Case Co. v. Borak*,
377 U.S. 426 (1964) ..................................................................................4

*J.N. Futia Co. v. Phelps Dodge Indus., Inc.*,
No. 78 Civ. 4547, 1982 U.S. Dist. LEXIS 15261
(S.D.N.Y. Sept. 17, 1982)..................................................................................17

*Miller v. Woodmoor Corp.*,
No. 74-F-988, 1978 U.S. Dist. LEXIS 15234
(D. Colo. Sept. 28, 1978) ..................................................................................15

916290_1

**Page**

*Missouri v. Jenkins,*
  491 U.S. 274 (1989) ...................................................................... 7

*Morse v. McWhorter,*
  No. 3:97-0370, slip op.
  (M.D. Tenn. Mar. 12, 2004) ........................................................ 7

*New Eng. Health Care Emps. Pension Fund v. Fruit of the Loom, Inc.,*
  234 F.R.D. 627 (W.D. Ky. 2006) ............................................ 5, 19

*Ramey v. Cincinnati Enquirer, Inc.,*
  508 F.2d 1188 (6th Cir. 1974) ............................................... 8, 10

*Rawlings v. Prudential-Bache Props.,*
  9 F.3d 513 (6th Cir. 1993) .................................................. 5, 8, 9

*Robbins v. Koger Props., Inc.,*
  116 F.3d 1441 (11th Cir. 1997) .................................................. 13

*Smillie v. Park Chem. Co.,*
  710 F.2d 271 (6th Cir. 1983) ....................................................... 8

*Sprague v. Ticonic Nat'l Bank,*
  307 U.S. 161 (1939) ................................................................... 5

*Swedish Hosp. Corp. v. Shalala,*
  1 F.3d 1261 (D.C. Cir. 1993) ...................................................... 5

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*
  551 U.S. 308 (2007) ............................................................... 4, 10

*Thacker v. Chesapeake Appalachia, L.L.C.,*
  695 F. Supp. 2d 521 (E.D. Ky. 2010), *aff'd sub nom.*
  *Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.,*
  636 F.3d 235 (6th Cir. 2011) .................................................... 5, 7

*Trustees v. Greenough,*
  105 U.S. 527 (1882) ................................................................ 4, 5

## STATUTES, RULES AND REGULATIONS

15 U.S.C.
  §78j(b) ................................................................................... 16
  §78u-4(a)(6) .............................................................................. 5

916290_1

**Page**

Federal Rules of Civil Procedure
  Rule 1................................................................................................................14

**SECONDARY AUTHORITIES**

Charles Silver, *Due Process and the Lodestar Method:*
*You Can't Get There From Here,*
  74 Tul. L. Rev. 1809 (June 2000)..........................................................6

Dr. Renzo Comolli and Svetlana Starykh, *Recent Trends in Securities*
*Class Action Litigation: 2013 Full-Year Review, Large Settlements Get*
*Larger; Small Settlements Get Smaller* (NERA January 21, 2014) ...............8

Ellen M. Ryan and Laura E. Simmons, *Securities Class Action*
*Settlements 2012 Review and Analysis* (Cornerstone Research 2013)........10

John C. Coffee, Jr., *Understanding the Plaintiff's Attorney:*
*The Implications of Economic Theory for Private Enforcement of*
*Law Through Class and Derivative Actions,*
  86 Colum. L. Rev. 669 (1986)..............................................................3

916290_1

## I.   INTRODUCTION

Plaintiffs' counsel have succeeded in obtaining a $31,600,000 cash Settlement Fund for the benefit of the Class.[1] The substantial recovery obtained for the Class was achieved through the skill, tenacity, and effective advocacy of Plaintiffs' counsel who now respectfully move this Court for an award of attorneys' fees in the amount of approximately 22% of the Settlement Fund, or $6,870,000, plus expenses incurred in prosecuting this Litigation of $154,016.56, plus interest on both amounts.

Awarding the fee on the percentage basis is the appropriate method of compensating counsel in this case, and the requested fee is well within the range of (and in fact below) percentages awarded in class actions in this District, Circuit, and across the country.[2] The amount requested is warranted in light of the substantial and certain recovery obtained, the extensive efforts of counsel in obtaining the result, and the significant risks in bringing and prosecuting this action on behalf of the Class. This Litigation was held to a high pleading standard under the Private Securities Litigation Reform Act of 1995 ("PSLRA") and thereafter was extremely risky and difficult. Plaintiffs' counsel were mindful of the fact that, in this post-PSLRA environment, a greater percentage of cases are being dismissed more than ever before. The effect of the PSLRA is to make it more difficult for investors to bring and successfully resolve securities class actions. As retired Supreme Court Justice Sandra Day O'Connor recognized: "To be successful, a securities class-action plaintiff must thread the eye of a needle made smaller and smaller over the years by judicial decree and congressional action." *Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 235 (5th Cir. 2009).

---

[1]   Submitted herewith in support of approval of the proposed settlement is the Memorandum of Law in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation of Settlement Proceeds ("Settlement Brief"). All terms used herein are defined in the Stipulation of Settlement dated as of November 8, 2013 (the "Stipulation") unless otherwise indicated.

[2]   Attached hereto as Exhibit A is a listing of cases where courts in class actions in this Circuit and other circuits have awarded fees of 25% or more of the settlement amount.

916290_1

In addition to the substantial risks in prosecuting this Litigation, the skill and effort to achieve the settlement was substantial. While the case settled at a relatively early stage, a result encouraged by the courts and consistent with the purposes of the Federal Rules of Civil Procedure, Plaintiffs' counsel marshaled considerable resources and committed substantial amounts of time and expense in the prosecution of the Litigation. As set forth in the Wyman Declaration, the settlement was not achieved until counsel: (i) conducted a thorough pre-filing investigation of Plaintiffs' claims, including a meticulous review of Diebold's public filings, analyst reports, and media items; (ii) filed a detailed Amended Class Action Complaint for Violation of the Securities Exchange Act of 1934 after further investigation ("Amended Complaint"); (iii) filed the Second Amended Class Action Complaint for Violation of the Securities Exchange Act of 1934 ("Second Amended Complaint"); (iv) successfully opposed Defendants' comprehensive motions to dismiss the Amended Complaint and the Second Amended Complaint; (v) propounded multiple sets of discovery to each Defendant; (vi) responded to multiple requests for production of documents and interrogatories from Defendants; (vii) filed a motion for class certification, which was supported by expert testimony; (viii) met extensively with experts in the fields of economics, loss causation and insurance coverage; (ix) prepared for and attended mediation with Judge Phillips followed by post-mediation settlement discussions with the assistance of Judge Phillips; and (x) negotiated and documented the final terms of settlement contained in the Stipulation. [3] Wyman Decl., ¶3.

Plaintiffs' counsel undertook the representation of the Class on a contingent fee basis and no payment has been made to Plaintiffs' counsel to date for their services or for the litigation expenses they have advanced on behalf of the Class. Plaintiffs' counsel firmly believe that the settlement is

---

[3]    The efforts of counsel in achieving this settlement are set forth in greater detail in the accompanying Declaration of Debra J. Wyman in Support of Motion for (1) Final Approval of Class Action Settlement and Plan of Allocation of Settlement Proceeds; and (2) Application of Plaintiffs' Counsel for an Award of Attorneys' Fees and Expenses (the "Wyman Decl.").

916290_1

the result of their diligent and effective advocacy, as well as their reputations as attorneys who are unwavering in their dedication to the interests of the class and unafraid to zealously prosecute a meritorious case through trial and subsequent appeals. In a case asserting claims based on complex legal and factual issues which were vigorously opposed by highly skilled and experienced defense counsel, Plaintiffs' counsel succeeded in securing a highly favorable result for the Class.

Significantly, the fee request was negotiated with the Court-appointed Lead Plaintiff, Building Trades United Pension Trust Fund. Wyman Decl., ¶10. As the Third Circuit held in *In re Cendant Corp. Litig.*, 264 F.3d 201, 220 (3d Cir. 2001): "[C]ourts should afford a presumption of reasonableness to fee requests submitted pursuant to an agreement between a properly-selected lead plaintiff and properly-selected lead counsel." The negotiated fee involves an increasing percentage fee as the recovery increases with an overall cap on fees of 25% of the amount recovered. Courts and commentators have suggested that ***increasing*** percentage fee arrangements are a better way to incentivize counsel. "'Many would say that this [increasing percentage] form of contingent fee agreement more closely rewards the effort and ability the lawyer brings to the engagement than does a straight percentage fee arrangement, since everyone would agree that it is the last dollars . . . of recovery that require the greatest effort and/or ability on the part of the lawyer.'" *In re Cendant Corp. Sec. Litig.*, 109 F. Supp. 2d 285, 296 (D.N.J. 2000) (quoting ABA, Formal Opinion 94-389 §J) and citing John C. Coffee, Jr., *Understanding the Plaintiff's Attorney: The Implications of Economic Theory for Private Enforcement of Law Through Class and Derivative Actions*, 86 Colum. L. Rev. 669, 725-26 (1986).

As discussed herein, as well as in the Settlement Brief and the Wyman Declaration, the requested fee is fair and reasonable when considered under the applicable standards in the Sixth Circuit and is well within the range of awards in class actions in this Circuit and courts nationwide.

916290_1

Moreover, the requested expenses are reasonable in amount and were necessarily incurred for the successful prosecution of the Litigation.

## II.    AWARD OF ATTORNEYS' FEES

### A.    Plaintiffs' Counsel Are Entitled to a Fee From the Common Fund They Obtained

The Supreme Court has long recognized the "common fund" exception to the general rule that a litigant bears his or her own attorneys' fees. *Trustees v. Greenough*, 105 U.S. 527 (1882). The rationale for the common fund principle was explained in *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980), as follows:

> [T]his Court has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole. . . . Jurisdiction over the fund involved in the litigation allows a court to prevent . . . inequity by assessing attorney's fees against the entire fund, thus spreading fees proportionately among those benefited by the suit.

The common fund doctrine both prevents unjust enrichment and encourages counsel to protect the rights of those who have very small claims. The Supreme Court has emphasized that private actions provide "'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [Securities and Exchange] Commission action.'" *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985) (quoting *J. I. Case Co. v. Borak*, 377 U.S. 426, 432 (1964)).[4]

### B.    The Court Should Award Attorneys' Fees Using the Percentage Approach

The diligent efforts of Plaintiffs' counsel have resulted in the creation of the Settlement Fund of $31,600,000. Courts generally favor awarding fees from a common fund based upon the

---

[4]    *See also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007) (noting that the Court has "long recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions").

percentage-of-the-fund method. *See Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984) (stating that in common fund cases "a reasonable fee is based on a percentage of the fund bestowed on the class"); *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 165-66 (1939); *Cent. R.R. & Banking Co. v. Pettus*, 113 U.S. 116, 124-25 (1885); *Greenough*, 105 U.S. at 532. The PSLRA also supports the use of the percentage-of-the-fund method. *See* 15 U.S.C. §78u-4(a)(6) ("Total attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class."). Thus, Congress followed the Supreme Court's lead and endorsed the efficacy of the percentage approach to fee awards in common fund cases.

Consistent with Supreme Court authority, the Sixth Circuit has also held that the percentage approach is a proper method for determining attorneys' fee awards in common fund cases. *See, e.g.*, *Rawlings v. Prudential-Bache Props.*, 9 F.3d 513, 515-16 (6th Cir. 1993). District courts in this Circuit have virtually uniformly shifted to the percentage method in awarding fees in common fund cases, particularly securities cases.[5] The Sixth Circuit is not alone in its use of the percentage approach. The vast majority of other circuits recognize the propriety of percentage fee awards in common fund cases and the shortcomings of the lodestar/multiplier method. For example, the District of Columbia Circuit held:

> We adopt a percentage-of-the-fund methodology . . . because it is more efficient, easier to administer, and more closely reflects the marketplace.

*Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1270 (D.C. Cir. 1993).

---

[5]   *See Thacker v. Chesapeake Appalachia, L.L.C.*, 695 F. Supp. 2d 521, 528 (E.D. Ky. 2010), *aff'd sub nom. Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235 (6th Cir. 2011); *New Eng. Health Care Emps. Pension Fund v. Fruit of the Loom, Inc.*, 234 F.R.D. 627, 633 (W.D. Ky. 2006) ("[T]he Court will apply the percentage-of-the-fund method which is consistent with the majority trend."); and *In re Telectronics Pacing Sys.*, 186 F.R.D. 459, 483 (S.D. Ohio 1999) ("the preferred method in common fund cases has been to award a reasonable percentage of the fund to Class Counsel as attorneys' fees"), *rev'd on other grounds*, 221 F.3d 870 (6th Cir. 2000).

916290_1

Moreover, as noted by most courts approving the percentage-of-the-fund method, the percentage method directly aligns the interests of the class and its counsel and provides a powerful incentive for efficient prosecution, thereby benefiting both litigants and the judicial system. The percentage-of-fund method also "affords the Court greater flexibility in assuring that Counsel are adequately compensated for the results that they have achieved and the work that they have done, while also protecting the Class' interest in the fund." *Bowling v. Pfizer, Inc.*, 922 F. Supp. 1261, 1280 (S.D. Ohio 1996).

One of the nation's foremost scholars in the field of class actions and attorneys' fees, Professor Charles Silver of the University of Texas School of Law, has also concluded that – among its many other benefits – the percentage method is also far superior to the lodestar method in aligning the interests of class counsel with the interests of absent class members. As Professor Silver notes:

> *The consensus that the contingent percentage approach creates a closer harmony of interests between class counsel and absent plaintiffs than the lodestar method is strikingly broad.* It includes leading academics, researchers at the RAND Institute for Civil Justice, and many judges, including those who contributed to the Manual for Complex Litigation, the Report of the Federal Courts Study Committee, and the report of the Third Circuit Task Force. Indeed, it is difficult to find anyone who contends otherwise. No one writing in the field today is defending the lodestar on the ground that it minimizes conflicts between class counsel and absent claimants.
>
> *In view of this, it is as clear as it possibly can be that judges should not apply the lodestar method in common fund class actions.* The Due Process Clause requires them to minimize conflicts between absent claimants and their representatives. The contingent percentage approach accomplishes this.

Charles Silver, *Due Process and the Lodestar Method: You Can't Get There From Here*, 74 Tul. L. Rev. 1809, 1819-20 (June 2000) (emphasis added; footnotes omitted).

## C.  The Requested Fee Award Is Well Within the Applicable Range of Percentage-of-Fund Awards

In selecting an appropriate percentage award, the Supreme Court recognizes that an appropriate fee is intended to approximate what counsel would receive if they were bargaining for

- 6 -

their services in the marketplace. *Missouri v. Jenkins*, 491 U.S. 274, 285 (1989).  If this were a non-representative action, the customary fee arrangement would be contingent, on a percentage basis, and in the range of 30% to 40% of the recovery.  *Blum*, 465 U.S. at 903* ("In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers.  In those cases, therefore, the fee is directly proportional to the recovery.").

Plaintiffs' counsel's request for an award of attorneys' fees equal to approximately 22%, or $6,870,000, of the Settlement Fund is below the range of prior percentage awards made by courts in this Circuit and courts nationwide.  *See, e.g., In re Nat'l Century Fin. Enters., Inc. Inv. Litig.*, No. 2:03-md-1565, 2009 U.S. Dist. LEXIS 45790, at *16 (S.D. Ohio May 27, 2009) (concluding 30% of the settlement amount was "within the percentage range that courts have awarded in securities class action settlements in the Sixth Circuit"); *In re Advanced Lighting Techs., Inc. Sec. Litig.*, No. 1:99CV836, slip op. (N.D. Ohio Jan. 17, 2003) (30% of $8.4 million settlement plus expenses); *Thacker*, 695 F. Supp. 2d at 528 (awarding fees of 30% of $28.75 million settlement and explaining "[u]sing the percentage approach, courts in this jurisdiction and beyond have regularly determined that 30% fee awards are reasonable"); *In re Packaged Ice Antitrust Litig.*, No. 08-MDL-01952, 2011 U.S. Dist. LEXIS 150427, at *76 (E.D. Mich. Dec. 13, 2011) (explaining "the requested award of close to 30% appears to be a fairly well-accepted ratio in cases of this type and generally in complex class actions").[6]

---

[6]     *Beach v. Healthways Inc.*, No. 3:08-cv-00569, slip op. (M.D. Tenn. Sept. 27, 2010) (Campbell, J.) (awarding 30% of $23.6 million settlement plus expenses); *In re Direct Gen. Corp. Sec. Litig.*, No. 3:05-0077, slip op. (M.D. Tenn. July 20, 2007) (Campbell, J.) (awarding 30% of $14.94 million settlement plus expenses); *Morse v. McWhorter*, No. 3:97-0370, slip op. (M.D. Tenn. Mar. 12, 2004) (Higgins, J.) (awarding a 33-1/3% fee of $49.5 million settlement plus expenses); *In re Old CCA Sec. Litig.*, No. 3:99-0458, 2001 U.S. Dist. LEXIS 21942 (M.D. Tenn. Feb. 9, 2001) (Campbell, J.) (awarding 30% of $104.1 million settlement plus expenses); and *In re Sirrom Capital Corp. Sec. Litig.*, No. 3-98-0643, slip op. (M.D. Tenn. Feb. 4, 2000) (Campbell, J.) (awarding 33-1/3% of a $15 million settlement plus expenses).

- 7 -

Moreover, the requested fee is below the median fee award for securities class actions that settled for greater than $25 million and less than $100 million based on an analysis of fee awards conducted in January 2014 by NERA. Using data from securities class actions that were finalized from 1996 through 2013, the study found that for settlements of greater than $25 million and less than $100 million, where this settlement falls, the median fee award ranged from between 25% and 27% of the settlement amount. Dr. Renzo Comolli and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2013 Full-Year Review, Large Settlements Get Larger; Small Settlements Get Smaller*, at 34, Figure 34 (NERA January 21, 2014).

**D.    Fee Awards in the Sixth Circuit**

Although the Court of Appeals for the Sixth Circuit has not expressly directed a preference for either the percentage approach or the lodestar method in common fund cases, the standard is whether an award is reasonable under the circumstances. *See Rawlings*, 9 F.3d at 517 (recognizing the growing trend towards adoption of a percentage approach in common fund cases, but declining to adopt a hard and fast rule applying the percentage approach in common fund cases). In determining the "reasonableness" of attorneys' fees, the Sixth Circuit identified six relevant factors for consideration: "1) the value of the benefit rendered to the corporation or its stockholders, 2) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others, 3) whether the services were undertaken on a contingent fee basis, 4) the value of the services . . ., 5) the complexity of the litigation, and 6) the professional skill and standing of counsel involved on both sides." *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974). *See also Smillie v. Park Chem. Co.*, 710 F.2d 271, 275 (6th Cir. 1983). Applying the *Ramey* factors to this fee and expense request, this Court reasonably may conclude that the percentage-of-the-fund requested is justified under the circumstances of this case and the fee is fair and reasonable.

III.     **APPLICATION OF THE *RAMEY* FACTORS**

A.     **The Value of the Benefits Achieved**

Plaintiffs' counsel have secured a settlement that provides for a substantial and certain cash payment of $31.6 million. Courts have consistently recognized that the result achieved is a major factor to be considered in making a fee award. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) ("most critical factor is the degree of success obtained").[7] This outstanding settlement was achieved as a direct result of the skill, effort, and tenacity of Plaintiffs' counsel in prosecuting this action on behalf of the Class. There is no question that Plaintiffs' counsel overcame numerous obstacles and took significant risks in obtaining this highly favorable result for the Class.

While Plaintiffs believe that their claims have substantial merit, if litigation were to proceed, there is, nonetheless, a significant risk that the Class could recover less than the amount of the settlement or nothing. Throughout the Litigation, Defendants have consistently maintained that Plaintiffs could not establish liability or damages and have challenged virtually every factual and legal issue in this Litigation in an effort to defeat Plaintiffs' claims. For example, in their motions to dismiss, Defendants maintained that Plaintiffs could not demonstrate loss causation. Indeed, proving loss causation is one of the major roadblocks that a plaintiff must overcome to successfully prosecute a securities class action and, if this action continued, would have been a hotly contested issue in this Litigation. *See, e.g., Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012) (affirmed a lower court ruling which granted defendants' motion for judgment as a matter of law based on plaintiff's failure to prove loss causation, thereby overturning a jury verdict in plaintiff's favor). In addition to the risk of proving loss causation, Plaintiffs would have faced significant risk

---

[7]    *See also Rawlings*, 9 F.3d at 516 (a percentage of the fund will compensate counsel for the result achieved); *In re Delphi Corp. Sec.*, 248 F.R.D. 483, 503 (E.D. Mich. 2008); *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 547-48 (S.D. Fla. 1988) ("The quality of work performed in a case that settles before trial is best measured by the benefit obtained."), *aff'd*, 899 F.2d 21 (11th Cir. 1990).

in proving the materiality of Defendants' alleged misstatements as well as each Defendant's scienter. Wyman Decl., ¶¶7, 44-46.

Despite the significant risks of continued litigation, Plaintiffs' counsel were able to achieve a result of significant value to the Class. The settlement, which represents approximately 10.7% of Plaintiffs' estimated maximum damages of $294 million, far exceeds the median recovery as a percentage of estimated damages. Indeed, for cases that settled with estimated damages of between $250 and $499 million, where this settlement falls, the median recovery was 1.8% for cases that settled in 2012 and 2.5% for cases that settled between 1996 and 2011. Ellen M. Ryan and Laura E. Simmons, *Securities Class Action Settlements 2012 Review and Analysis* at 8, Figure 8 (Cornerstone Research 2013).

### B.    Public Policy Considerations

The federal securities laws are remedial in nature, and, to effectuate their purpose of protecting investors, the courts must encourage private lawsuits. *See Basic Inc. v. Levinson*, 485 U.S. 224, 230-31 (1988). The Supreme Court has emphasized that private securities actions such as this provide "'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [SEC] action.'" *Bateman*, 472 U.S. at 310 (citation omitted); *Tellabs*, 551 U.S. at 313. The percentage-of-the-fund method is prevalent in common fund cases because plaintiffs' counsel in complex securities class action litigation are invariably retained on a contingent basis, largely due to the huge commitment of time and expense required. Adequate compensation to encourage attorneys to assume the risk of litigation is in the public interest. Indeed, without adequate compensation, it would be difficult to retain the caliber of lawyers necessary, willing, and able to properly prosecute to a favorable conclusion complex, risky, and expensive class actions such as this one. Thus, an important factor is "society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others." *Ramey*, 508 F.2d at 1196. As the court noted in

- 10 -

*In re Prudential-Bache Energy Income P'ships Sec. Litig.*, No. 888, 1994 U.S. Dist. LEXIS 6621, at *20-*21 (E.D. La. May 18, 1994):

> In complex securities class actions and shareholder derivative litigation, able counsel for plaintiffs can be retained only on a contingent basis. A large segment of the investing public would be denied a remedy for violations of the securities laws and breaches of fiduciary duty by public companies and those entrusted with their stewardship if contingent fees awarded by the courts did not fairly and adequately compensate counsel for the services provided, the serious risks undertaken and the delay before any compensation is received.

Without the willingness of Plaintiffs' counsel to assume that task, Members of the Class would not have recovered anything, let alone the many millions of dollars obtained here for their benefit. As actionable securities fraud exists and society benefits from strong advocacy on behalf of security holders, public policy favors the granting of the fee and expense application.

### C.     The Contingent Nature of the Fee

Plaintiffs' counsel undertook this Litigation on a contingent fee basis, assuming a significant risk that the Litigation would yield no recovery and leave them uncompensated. This risk encompasses not only the risk of zero payment, but also the risk of underpayment. *See In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 569-70 (7th Cir. 1992). Unlike counsel for Defendants, who are paid an hourly rate and paid for their expenses on a regular basis, Plaintiffs' counsel have not been compensated for any time or expenses since this case began in June 2010. Courts have consistently recognized that the risk of receiving little or no recovery is a major factor in considering an award of attorneys' fees. For example, in awarding counsel's attorneys' fees in *Prudential-Bache*, 1994 U.S. Dist. LEXIS 6621, at *16, the court noted the risks that plaintiffs' counsel had taken:

> Although today it might appear that risk was not great based on Prudential Securities' global settlement with the Securities and Exchange Commission, such was not the case when the action was commenced and throughout most of the litigation. Counsel's contingent fee risk is an important factor in determining the fee award. Success is never guaranteed and counsel faced serious risks since both trial and judicial review are unpredictable. Counsel advanced all of the costs of litigation, a not insubstantial amount, and bore the additional risk of unsuccessful prosecution.

916290_1

While securities cases have always been complex and difficult to prosecute, the PSLRA has only increased the difficulty in successfully prosecuting a securities class action. Plaintiffs' counsel addressed numerous difficult issues in opposing Defendants' motions to dismiss and there was no guarantee that those claims would survive the heightened pleading standards of the PSLRA. As one court has noted: "An unfortunate byproduct of the PSLRA is that potentially meritorious suits will be short-circuited by the heightened pleading standard." *Bryant v. Avado Brands, Inc.*, 100 F. Supp. 2d 1368, 1377 (M.D. Ga. 2000), *rev'd on other grounds sub nom. Bryant v. Dupree*, 252 F.3d 1161 (11th Cir. 2001).[8] Even after the denial of Defendants' motions to dismiss, Plaintiffs still faced the substantial burden of proving, *inter alia*, that each of the Defendants was responsible for an omission or a misstatement that was material, that the omissions or misstatements impacted the market price of Diebold's stock and caused damage to the Class, and, that each Defendant acted with scienter. *In re Comshare, Inc. Sec. Litig.*, 183 F.3d 542, 548 (6th Cir. 1999).

As noted herein and in the Settlement Brief, Defendants steadfastly maintained that they did nothing wrong and would offer evidence, including the testimony of expert witnesses, to support their positions. Assuming Plaintiffs were able to certify a class, overcome Defendants' anticipated motion(s) for summary judgment after the completion of discovery, and prove liability at trial, they still would have faced significant risks in proving loss causation and damages. Plaintiffs claimed damages could be significantly reduced if Defendants prevailed on issues relating to liability, showed that any assumption made by Plaintiffs' experts was incorrect or unreliable, or could show that any portion of the market drop was due to factors other than the alleged fraud or that the market was inefficient. Plaintiffs realized that in the inevitable "battle of experts," the jury could have sided with Defendants' expert(s) and found no damages or only a fraction of the damages Plaintiffs

---

[8] Even strong cases that ultimately have been widely recognized as meritorious have been dismissed. *See Goldstein v. MCI WorldCom*, 340 F.3d 238 (5th Cir. 2003).

- 12 -

claimed. *See In re Lupron(R) Mktg. & Sales Practices Litig.*, MDL No. 1430, 2005 U.S. Dist. LEXIS 17456, at *16 (D. Mass. Aug. 17, 2005) ("History is replete with cases in which plaintiffs prevailed at trial on issues of liability, but recovered little or nothing by way of damages.") (collecting cases).

Indeed, the risk of no recovery in complex cases of this type is very real. There are numerous class actions in which plaintiff's counsel expended thousands of hours and yet received no remuneration whatsoever despite their diligence and expertise. *See, e.g., In re Oracle Corp. Sec. Litig.*, No. C 01-00988 SI, 2009 U.S. Dist. LEXIS 50995 (N.D. Cal. June 16, 2009), *aff'd*, 627 F.3d 376 (9th Cir. 2010) (court granted summary judgment to defendants after eight years of litigation, and after plaintiff's counsel incurred over $6 million in expenses, and worked over 100,000 hours, representing a lodestar of approximately $48 million). Plaintiffs' counsel are aware of many other hard-fought lawsuits where, because of the discovery of facts unknown when the case was commenced, or changes in the law during the pendency of the case, or a decision of a judge or jury following a trial on the merits, excellent professional efforts of members of the plaintiff's bar produced no fee for counsel. As the court in *In re Xcel Energy, Inc.*, 364 F. Supp. 2d 980, 994 (D. Minn. 2005) recognized, "[p]recedent is replete with situations in which attorneys representing a class have devoted substantial resources in terms of time and advanced costs yet have lost the case despite their advocacy." Even plaintiffs who get past summary judgment and succeed at trial may find a judgment in their favor overturned on appeal or on a post-trial motion. As noted above, the Eleventh Circuit in *Hubbard* very recently upheld a lower court's decision overturning a jury verdict because plaintiff did not present sufficient evidence to prove loss causation. *See Hubbard*, 688 F.3d 713. This is *not* an infrequent risk. It occurs much more often than one might expect.[9]

---

[9]    *See, e.g., In re JDS Uniphase Corp. Sec. Litig.*, No. C-02-1486-CW(EDL), 2007 WL 4788556 (N.D. Cal. Nov. 27, 2007) (defense verdict by jury); *Robbins v. Koger Props., Inc.*, 116 F.3d 1441, 1448-49 (11th Cir. 1997) (jury verdict of $81 million for plaintiffs against an accounting firm

- 13 -

Because the fee in this matter was entirely contingent, the only certainties were that there would be no fee without a successful result and that such a result would be realized only after considerable and difficult effort.  The contingent nature of counsel's representation strongly favors approval of the requested fee.

### D.        The Diligent Prosecution of the Litigation

A considerable effort on the part of Plaintiffs' counsel was required to obtain this outstanding settlement.  As a result of that effort, a substantial and certain recovery of $31.6 million has been obtained at a relatively early stage of the litigation without the substantial expense, delay, risk and uncertainty of continued litigation.   Indeed, early settlements are encouraged by courts and are consistent with the purposes of the Federal Rules of Civil Procedure, which "'shall be construed and administered to ensure the *just, speedy and inexpensive determination* of every action.'"  *Xcel*, 364 F. Supp. 2d at 992 (quoting Fed. R. Civ. P. 1) (emphasis in original).  Plaintiffs' counsel have spent more than 3,000 hours with a resulting lodestar of $1,628,280.  As discussed in more detail in the Wyman Declaration, the settlement was not achieved until Plaintiffs' counsel, *inter alia*, conducted an extensive investigation of the factual and legal basis for Plaintiffs' claims; reviewed and analyzed an enormous quantity of publicly-available information about Defendants and the allegations; filed detailed complaints alleging Defendants' violations of the federal securities laws; successfully opposed Defendants' attacks on the pleadings over Defendants' determined opposition; consulted with economics, damages, loss causation and insurance experts; pursued discovery; filed a motion for class certification; drafted and exchanged detailed mediation statements; engaged in hard-fought

---

reversed on appeal on loss causation grounds and judgment entered for defendant); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215, 1233 (10th Cir. 1996) (Tenth Circuit overturned securities fraud class action jury verdict for plaintiffs in case filed in 1973 and tried in 1988 on the basis of 1994 Supreme Court opinion); *In re Apple Computer Sec. Litig.*, No. C-84-20148(A)-JW, 1991 U.S. Dist. LEXIS 15608, at *1-*2 (N.D. Cal. Sept. 6, 1991) (verdict against two individual defendants, but court vacated judgment on motion for judgment notwithstanding the verdict).

916290_1

settlement negotiations with the substantial assistance of Judge Phillips; and negotiated the terms of the Stipulation. *See* Wyman Decl., ¶¶3, 4, 15, 17-18, 21, 23, 34, 36, 40, 51-53. The significant resources devoted by Plaintiffs' counsel reflects the substantial effort entailed in bringing this difficult Litigation to a successful and highly favorable conclusion for the Class. As set forth herein, in the Wyman Declaration and the Settlement Brief, Defendants mounted a vigorous defense and fought Plaintiffs at every step. Given the risks involved and the result obtained, the requested fee is reasonable and appropriate.

### E.     The Complexity of the Litigation

The complexity of the issues is a significant factor to be considered in making a fee award. Courts have long recognized that securities class actions present inherently complex and novel issues. As Judge Finesilver noted in *Miller v. Woodmoor Corp.*, No. 74-F-988, 1978 U.S. Dist. LEXIS 15234 (D. Colo. Sept. 28, 1978):

> The benefit to the class must also be viewed in its relationship to the complexity, magnitude, and novelty of the case. . . .
>
> Despite years of litigation, the area of securities law has gained little predictability. There are few "routine" or "simple" securities actions. Courts are continually modifying and/or reversing prior decisions in an attempt to interpret the securities law in such a way as to follow the spirit of the law while adapting to new situations which arise. Indeed, many facets of securities law have taken drastically new directions during the pendency of this action. . . .
>
> The complexity of a case is compounded when it is certified as a class action. . . . Management of the case, in and of itself, is a monumental task for counsel and the Court.

*Id.* at *11-*12. Judge Finesilver's comments ring even more true today. While courts have always recognized that securities class actions carry significant complexities, the adoption of the PSLRA has made the successful prosecution of these cases even more complex and uncertain.

There is no question that from the outset this Litigation presented a number of sharply contested issues of both fact and law and that Plaintiffs faced formidable defenses to liability and

- 15 -

916290_1

damages.  At the heart of Plaintiffs' allegations are complex accounting practices that Plaintiffs allege caused Diebold to inflate its earnings to meet analyst forecasts.  These fraudulent practices included: (i) improper use of "bill-and-hold" accounting; (ii) improper revenue recognition with respect to a lease agreement subject to an undisclosed buy-back agreement; (iii) manipulating reserves and accruals; (iv) improperly delaying and capitalizing expenses; and (v) improperly inflating the value of used inventory.  Plaintiffs also allege that KPMG violated §10(b) of the Exchange Act by continuing to issue unqualified audit opinions falsely certifying that Diebold's financial statements were presented "fairly" and in compliance with Generally Accepted Accounting Principles ("GAAP"), even after discovering the Diebold Defendants' alleged fraudulent accounting practices.  Plaintiffs also alleged that these fraudulent practices rendered the Company's publicly reported financial results – as well as KPMG's audits thereof – materially misleading.  In September 2008, Diebold restated each of its quarterly and yearly financial statements for the period 2003 through 2006, and the first quarter of 2007 relating to Diebold's CA&D loan portfolio and the Company's loan loss reserves.  Throughout the Litigation, Defendants have adamantly denied liability and asserted that they had absolute defenses to Plaintiffs' claims.  *See Churchill Vill., L.L.C. v. GE*, 361 F.3d 566, 576 (9th Cir. 2004) (concluding that the district court properly weighed risk when it concluded defendant's belief that it had a strong case on merits supported finding of risk).

As discussed in the Wyman Declaration and the Settlement Brief, substantial risks and uncertainties in this type of litigation, and in this case in particular, made it far from certain that a recovery, let alone $31.6 million, would ultimately be obtained.  From the outset, this post-PSLRA action was an especially difficult and highly uncertain securities case, with no assurance whatsoever that the Litigation would survive Defendants' attacks on the pleadings, motion(s) for summary judgment, trial, and appeals.  As the court noted in *In re Ikon Office Solutions, Inc.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000), "[t]here were the legal obstacles of establishing scienter, damages,

916290_1

causation . . . . The court also acknowledges that securities actions have become more difficult from a plaintiff's perspective in the wake of the PSLRA." The court's statements in *Ikon* are certainly applicable here.

Even if Plaintiffs obtained a significant judgment after trial, the inevitable appeals would follow. As noted above, in complex and substantial cases such as this, it must be recognized that even a victory at the trial stage does not guarantee ultimate success. Both trial and judicial review are unpredictable and could seriously and adversely affect the scope of an ultimate recovery, if not the recovery itself. Despite the novelty and difficulty of the issues raised, counsel secured an excellent result for the Class. As a result, this factor strongly supports the requested award.

### F.    The Quality of the Representation

Plaintiffs' counsel include locally and nationally known leaders in the fields of securities class actions and complex litigation. *See* www.rgrdlaw.com and www.teamlgm.com. The quality of the representation is best demonstrated by the substantial benefit achieved for the Class and the effective and efficient prosecution and resolution of the Litigation under difficult and challenging circumstances. The substantial recovery obtained for the Class is the direct result of the substantial efforts of highly skilled and specialized attorneys who possess significant experience in the prosecution of complex securities class actions. From the outset of the Litigation, Plaintiffs' counsel engaged in a concerted effort to obtain the maximum recovery for the Class and committed considerable resources and time in the research, investigation, and prosecution of this case. Based upon Plaintiffs' counsel's diligent efforts and their skill and reputation, Plaintiffs' counsel were able to negotiate a highly favorable result under difficult and challenging circumstances. Such quality, efficiency, and dedication support the requested fee. *J.N. Futia Co. v. Phelps Dodge Indus., Inc.*, No. 78 Civ. 4547, 1982 U.S. Dist. LEXIS 15261 (S.D.N.Y. Sept. 17, 1982).

- 17 -

The quality of opposing counsel is also important when the court evaluates the services rendered by plaintiffs' counsel. *See, e.g.*, *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 467 (S.D.N.Y. 2004) ("Securities Lead Counsel obtained the Settlement in the face of vigorous opposition by defendants who were represented by some of the nation's leading law firms."). Plaintiffs' counsel were opposed in this Litigation by very skilled and highly respected counsel from Baker & Hostetler LLP, Jones Day, Ulmer & Berne LLP, McDermott Will & Emery, LLP, and Vorys, Sater, Seymour and Pease LLP, firms with well-deserved reputations for vigorous advocacy in the defense of complex civil actions. The ability of Plaintiffs' counsel to obtain a favorable result for the Class in the face of such formidable opposition further evidences the quality of their work. *See Delphi*, 248 F.R.D. at 504 ("The ability of Co-Lead Counsel to negotiate a favorable settlement in the face of formidable legal opposition further evidences the reasonableness of the fee award requested.").

Thus, there can be no dispute that all of the factors discussed above weigh in favor of the fee and expense award requested, and that the Court should grant Plaintiffs' counsel's fee and expense application in its entirety.

## IV. PLAINTIFFS' COUNSEL'S EXPENSES ARE REASONABLE AND WERE NECESSARILY INCURRED TO ACHIEVE THE BENEFIT OBTAINED

Plaintiffs' counsel also request payment of expenses incurred by them in connection with the prosecution of this Litigation in the amount of $154,016.56. *See* accompanying Declaration of Debra J. Wyman Filed on Behalf of Robbins Geller Rudman & Dowd LLP in Support of Application for Award of Attorneys' Fees and Expenses, the Declaration of Jack Landskroner Filed on Behalf of Landskroner • Grieco • Merriman, LLC in Support of Application for Award of Attorneys' Fees and Expenses, and the Declaration of Tyler Gerking Filed on Behalf of Farella Braun + Martel LLP in Support of Application for Award of Attorneys' Fees and Expenses attesting to the accuracy of Plaintiffs' counsel's expenses. The appropriate analysis to apply in deciding

916290_1

which expenses are compensable in a common fund case of this type is whether the particular costs are of the type typically billed by attorneys to paying clients in the marketplace.[10]  The categories of expenses for which counsel seek payment here are the type of expenses routinely charged to hourly clients and, therefore, should be paid out of the common fund.

A large component of Plaintiffs' counsel's expenses are the costs of experts, including the retention of damage experts with significant experience opining on damages in securities class actions were essential to understanding the issues relative to recoverable damages as well as loss causation.  Plaintiffs' counsel were also required to travel in connection with this Litigation and thus incurred the related costs of meals, lodging, and transportation.  Plaintiffs' counsel also incurred the costs of computerized research.  It is standard practice for attorneys to use these services to assist them in researching legal and factual issues.  Other expenses that were necessarily incurred in the prosecution of this Litigation include expenses for mediation fees, photocopying, filing and witness fees, postage and overnight delivery, and telephone and telecopier expenses.  Because these were all necessary expenses incurred by Plaintiffs' counsel, they should be paid from the Settlement Fund.

---

[10]  *See Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) ("Harris may recover as part of the award of attorney's fees those out-of-pocket expenses that 'would normally be charged to a fee paying client.'") (citation omitted); *see also New Eng. Health Care*, 234 F.R.D. at 635 ("In determining whether the requested expenses are compensable, the Court has considered 'whether the particular costs are the type routinely billed by attorneys to paying clients in similar cases.'") (citation omitted).

- 19 -

## V.  CONCLUSION

For all of the foregoing reasons, Plaintiffs' counsel respectfully request that the Court approve Plaintiffs' counsel's application for attorneys' fees and expenses.

DATED:  February 19, 2014                    Respectfully submitted,

LANDSKRONER • GRIECO • MERRIMAN, LLC
JACK LANDSKRONER (0059227)
1360 West 9th Street, Suite 200
Cleveland, OH  44113
Telephone:  216/522-9000
216/522-9007 (fax)

Liaison Counsel

ROBBINS GELLER RUDMAN & DOWD LLP
DEBRA J. WYMAN
SUSANNAH R. CONN


                                                    s/ Debra J. Wyman
                        _____
                                               DEBRA J. WYMAN

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

Lead Counsel for Plaintiff

916290_1

**EXHIBIT A**

2004 – 2013
Cases In Which Award Of Fees Equalled Or Exceeded
25% Of The Fund Plus Expenses (with Settlement Amounts)

1.   *Levine v. Atricure, Inc.*, No. 1:06-cv-14324-RJH (S.D.N.Y. May 27, 2011) (awarded fees of 33-1/3% of $2 million recovery, plus expenses);

2.   *In re Noah Educ. Holdings Ltd. Sec. Litig.*, No. 1:08-cv-09203 (S.D.N.Y. May 27, 2011) (awarded fees of 33-1/3% of $1.75 million recovery, plus expenses);

3.   *Eaton v. Halifax PLC*, No. MON-L-2365-03 (Monmouth Cnty. NJ Super. Ct. May 26, 2011) (awarded fees of 33-1/3% of $8.6 million recovery, plus expenses);

4.   *Menkes v. Stolt-Nielsen S.A.*, No. 3:03CV00409(DJS) (D. Conn. Jan. 25, 2011) (awarded fees of 33-1/3% of $2 million recovery, plus expenses);

5.   *Moorhead v. CONSOL Energy, Inc.*, No. 2:03-cv-01588-TFM (W.D. Pa. May 14, 2007) (awarded fees of 33-1/3% of $2.7 million recovery; plus expenses);

6.   *Wade v. Bayer AG, et al.*, No. CT-004748-06 (Shelby County, Tenn. Cir. Ct. Dec. 7, 2006) (awarded fees of 33-1/3% of $3.7 million recovery, plus expenses);

7.   *In re Van der Moolen Holding N.V. Sec. Litig.*, No. 1:03-CV-8284 (S.D.N.Y. Dec. 6, 2006) (awarded fees of 33-1/3% of $8 million recovery, plus expenses);

8.   *In re Interpool, Inc. Sec. Litig.*, No. 3:04-cv-00321-SRC (D.N.J. Sept. 9, 2006) (awarded fees of 33-1/3% of $1 million recovery, plus expenses);

9.   *Denver Area Meat Cutters and Employers Pension Plan v. James L. Clayton, et al.*, Case No. E-19723 (Blount County Tenn. June 8, 2005) (awarded fees of 33-1/3% of $5 million recovery, plus expenses);

10.  *Lezin v. MiniMed, Inc., et al.*, Case No. BC251832 (Los Angeles Super. Ct. Aug. 10, 2004) (awarded fees of 33-1/3% of $1.25 million recovery, plus expenses);

11.  *Franks v. Cheap Tickets, Inc., et al.*, Civil No. 01-1-2376-08-DDD (1st Cir. Haw. July 2, 2004 (awarded fees of 33-1/3% of $1 million recovery, plus expenses);

12.  *In re State Street Bank and Trust Co. Fixed Income Funds Inv. Litig.*, No. 1:08-cv-08235-PAC (S.D.N.Y. Sept. 6, 2012) (awarded fees of 33% of $6.25 million recovery, plus expenses);

13.  *Schultz v. Applica, Inc.*, No. 06-60149-CIV (S.D. Fla. Jan. 15, 2008) (awarded fees of 33% of $2 million recovery, plus expenses);

14.  *In re Canadian Superior Energy Inc. Sec. Litig.*, Master File No. 04-CV-02020(RO) (S.D.N.Y. Oct. 19, 2005) (awarded fees of 33% of $3.2 million recovery, plus expenses);

15.  *Thomas & Thomas Rodmakers Inc., et al. v. Newport Adhesives and Composites, Inc., et al.*, Case No. CV-99-07796-FMC(RNBx) (C.D. Cal. Oct. 17, 2005) (awarded fees of 33% of $36.25 million recovery, plus expenses);

16.  *Roth v. Aon Corp.*, No. 04-C-6835 (N.D. Ill. Nov. 18, 2009) (awarded fees of 31% of $30 million recovery, plus expenses);

17.  *Citiline Holdings, Inc. v. iStar Fin. Inc.*, No. 1:08-cv-03612-RJS (S.D.N.Y. Apr. 5, 2013) (awarded fees of 30% of $29 million recovery, plus expenses);

18.  *In re Constar Int'l Sec. Litig.*, No. 03cv05020 (E.D. Pa. Dec. 19, 2012) (awarded fees of 30% of $23.5 million recovery, plus expenses);

19.  *Siracusano v. Matrixx Initiatives, Inc.*, No. CV-04-0886-PHX-NVW (D. Ariz. Nov. 13, 2012) (awarded fees of 30% of $4.5 million recovery, plus expenses);

20.  *Winslow v. BancorpSouth, Inc.*, No. 3:10-cv-00463 (M.D. Tenn. Oct. 31, 2012) (awarded 30% of $29.25 million recovery, plus expenses);

21.  *Szymborski v. Ormat Techs., Inc.*, No. 3:10-CV-132-RCJ (D. Nev. Oct. 16, 2012) (awarded fees of 30% of $3.1 million recovery, plus expenses);

22.  *City of Ann Arbor Emps.' Ret. Sys. v. Sonoco Prods. Co., et al.*, No. 4:08-cv-02348-TLW-KDW (D.S.C. Sept. 7, 2012) (awarded fees of 30% of $13 million recovery, plus expenses);

23.  *In re Sturm, Ruger & Co., Inc. Sec. Litig.*, No. 3:09-cv-01293-VLB (D. Conn. Aug. 20, 2012) (awarded fees of 30% of $3 million recovery, plus expenses);

24.  *Local 731 I.B. of T. Excavators and Pavers Pension Trust Fund v. Swanson*, No. 1:09-cv-00799-MMB (D. Del. June 22, 2012) (awarded 30% of $25 million recovery, plus expenses);

25.  *In re Focus Media Holding Ltd. Litig.*, No. 1:07-cv-10617-LTS(GWG) (S.D.N.Y. Apr. 25, 2012) (awarded fees of 30% of $2 million recovery, plus expenses);

26.  *Western Wash. Laborers-Employers Pension Trust v. Panera Bread Co., et al.*, No. 4:08-cv-00120 ERW (E.D. Mo. June 22, 2011) (awarded fees of 30% of $5.75 million recovery, plus expenses);

27.  *Norfolk Cnty. Ret. Sys. v. Ustian*, No. 1:07-cv-07014 (N.D. Ill. May 25, 2011) (awarded fees of 30% of $13 million recovery, plus expenses);

28.  *In re Orion Sec. Litig.*, No. 1:08-cv-01328-RJS (S.D.N.Y. Apr. 14, 2011) (awarded fees of 30% of $3.25 million recovery, plus expenses);

29.  *Schultz v. Tomotherapy, Inc.*, No. 08-cv-000314-SLC (W.D. Wis. Mar. 22, 2011) (awarded fees of 30% of $5 million recovery, plus expenses);

30.   *In re L.G. Philips LCD Co., Ltd. Sec. Litig.*, No. 1:07-cv-00909-RJS (S.D.N.Y. Mar. 17, 2011) (awarded fees of 30% of $18 million recovery, plus expenses);

31.   *In re Gilead Sciences Sec. Litig.*, No. C-03-4999-SI (N.D. Cal. Nov. 5, 2010) (awarded 30% of $8.25 million recovery, plus expenses);

32.   *Beach v. Healthways, Inc.*, No. 3:08-cv-00569 (M.D. Tenn. Sept. 27, 2010) (awarded fees of 30% of $23.6 million recovery, plus expenses);

33.   *In re TeleTech Litigation*, No. 1:08-cv-00913-LTS (S.D.N.Y. June 11, 2010) (awarded fees of 30% of $11 million recovery, plus expenses);

34.   *In re PETCO Animal Supplies, Inc. S'holder Litig.*, No. GIC 869399 (San Diego Super. Ct. Mar. 26, 2010) (awarded fees of 30% of $16 million recovery, plus expenses);

35.   *Kelleher v. ADVO, Inc.*, No. 3:06-cv-01422-AVC (D. Conn. Mar. 3, 2010) (awarded fees of 30% of $12.5 million recovery, plus expenses);

36.   *Hawaii Structural Ironworkers Pension Trust Fund v. Calpine Corp.*, No. 1-04-CV-021465 (Santa Clara Super. Ct. Feb. 3, 2010) (awarded fees of 30% of $43 million recovery, plus expenses);

37.   *In re Prestige Brands Holdings, Inc. Sec. Litig.*, No. 7:05-cv-06924-CS (S.D.N.Y. Dec. 7, 2009) (awarded fees of 30% of $11 million recovery, plus expenses);

38.   *Rines v. Heelys, Inc.*, No. 3:07-cv-01468-K (N.D. Tex. Nov. 17, 2009) (awarded fees of 30% of $7.5 million recovery, plus expenses);

39.   *Aviva Partners LLC v. Exide Techs.*, No. 3:05-cv-03098-MLC-LHG (D.N.J. June 23, 2009) (awarded fees of 30% of $13.7 million recovery, plus expenses);

40.   *W. Pa. Elec. Employees Pension Fund v. Candela Corp.*, No. 1:08-cv-10551-DPW (D. Mass. June 23, 2009) (awarded fees of 30% of $3.85 million recovery, plus expenses);

41.   *Crowell v. Mannatech, Inc.*, No. 3:07-cv-00238-K (N.D. Tex. Mar. 10, 2009) (awarded fees of 30% of $11.25 million recovery, plus expenses);

42.   *In re LaBranche Sec. Litig.*, No. 03-CV-8201(RWS) (S.D.N.Y. Jan. 22, 2009) (awarded fees of 30% of $13 million recovery, plus expenses);

43.   *In re OSI Pharm., Inc. Sec. Litig.*, No. 2:04-CV-05505-JS-WDW (E.D.N.Y. Aug. 22, 2008) (awarded fees of 30% of $9 million recovery, plus expenses);

44.   *In re ChoicePoint, Inc. Sec. Litig.*, No. 1:05-CV-00686-JTC (N.D. Ga. July 21, 2008) (awarded fees of 30% of $10 million recovery, plus expenses);

45.  *Cement Masons & Plasters Joint Pension Trust v. TNS Inc.*, No. 1:06-cv-00363-CMH-BRP (E.D. Va. June 20, 2008) (awarded fees of 30% of $3.6 million recovery, plus expenses);

46.  *Croker v. Carrier Access Corp.*, No. 1:05-cv-01011-LTB-OES (D. Colo. Jan. 25, 2008) (awarded fees of 30% of $7.4 million recovery, plus expenses);

47.  *In re UICI Sec. Litig.*, No. 3:04-CV-1149-P (N.D. Tex. Jan. 23, 2008) (awarded fees of 30% of $6.9 million recovery, plus expenses);

48.  *In re Terayon Commc'n Sys., Inc. Sec. Litig.*, No. C-00-1967-MHP (N.D. Cal. Oct. 3, 2007) (awarded fees of 30% of $15 million recovery, plus expenses);

49.  *In re aaiPharma Inc. Sec. Litig.*, No. 7:04-CV-27-D (E.D. N.C. Oct. 2, 2007) (awarded fees of 30% of $7.55 million recovery, plus expenses);

50.  *In re Acclaim Entm't Sec. Litig.*, No. 2:03-CV-1270(JS)(ETB) (E.D.N.Y. Oct. 2, 2007) (awarded fees of 30% of $13.65 million recovery, plus expenses);

51.  *In re Odimo, Inc. Sec. Litig.*, No. 0512500 (Broward County Fla. Super. Ct. Sept. 25, 2007) (awarded fees of 30% of $1.25 million recovery, plus expenses);

52.  *In re eMachines, Inc. Merger Litig.*, No. 01-CC-00156 (Orange County Super. Ct. July 25, 2007) (awarded fees of 30% of $24 million recovery, plus expenses);

53.  *In re Direct Gen. Corp. Sec. Litig.*, No. 3:05-0077 (M.D. Tenn. July 20, 2007) (awarded fees of 30% of $14.94 million recovery, plus expenses);

54.  *The Takara Trust v. Molex Incorporated, et al.*, No. 05-C-1245 (N.D. Ill. Mar. 1, 2007) (awarded fees of 30% of $10.5 million recovery, plus expenses);

55.  *Underwood, et al. v. Lampert, et al.*, No. 1:02-cv-21154-CMA/Turnoff (S.D. Fla. Jan. 29, 2007) (awarded fees of 30% of $1.5 million recovery, plus expenses);

56.  *In re AMERCO Sec. Litig.*, No. 04-2182-PHX-RJB (D. Ariz. Nov. 2, 2006) (awarded fees of 30% of $7 million recovery; plus expenses);

57.  *Greater Pennsylvania Carpenters Pension Fund v. Whitehall Jewellers, Inc., et al.*, No. 04 C 1107 (N.D. Ill. July 24, 2006) (awarded fees of 30% of $7.5 million recovery, plus expenses);

58.  *In re Stellent, Inc. Sec. Litig.*, Master File No. CV-03-4384 RHK/AJB (D. Minn. Nov. 16, 2005) (awarded fees of 30% of $12 million recovery, plus expenses);

59.  *In re Descartes Systems Group, Inc. Sec. Litig.*, Master File No. 04 Civ. 3793(LTS)(MHD) (S.D.N.Y. Sept. 16, 2005) (awarded fees of 30% of $1.5 million recovery, plus expenses);

60. *Brody v. Hellman*, Case No. 00-CV-4142 (City & County Denver Colo. Aug. 30, 2005) (awarded fees of 30% of $50 million recovery, plus expenses);

61. *In re Daisytek International Litig.*, Master Docket No. 4:03-CV-212 (E.D. Tex. July 20, 2005) (awarded fees of 30% of $6 million recovery, plus expenses);

62. *In re Novell, Inc. Sec. Litig.*, Case No. 2:99-CV-995 TC (D. Utah May 26, 2005) (awarded fees of 30% of $13.9 million recovery, plus expenses);

63. *Deckler v. Ionics, Inc., et al.*, No. 03-CV-10393-WGY (D. Mass. Apr. 4, 2005) (awarded fees of 30% of $3 million recovery, plus expenses);

64. *Southland Securities Corporation v. INSpire Insurance Solutions, Inc.*, No. 4:00-CV-355y (N.D. Tex. Mar. 9, 2005) (awarded fees of 30% of $4.8 million recovery, plus expenses);

65. *Steinbeck v. Sonic Innovations, Inc., et al.*, Case No. 2:00-CV-848-PGC (D. Utah May 25, 2004 (awarded fees of 30% of $7 million recovery, plus expenses);

66. *Broderick v. Mazur (PHP Healthcare)*, No. CV-98-1658-MRP(AJWx) (C.D. Cal. Apr. 27, 2004) (awarded fees of 30% of $4.5 million recovery, plus expenses);

67. *Ronconi v. Larkin*, Case No. 767087-5 OV (Alameda County Super. Ct. Jan. 6, 2004) (awarded fees of 30% of $2.5 million recovery, plus expenses);

68. *Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives and Composites, Inc.*, Case No. CV-99-07796-FMC(RNx) (C.D. Cal. Jan. 31, 2005) (awarded fees of 29% of $32.75 million recovery, plus expenses);

69. *In re Accredo Health, Inc. Sec. Litig.*, No. 03-CV-2216 (W.D. Tenn. Feb. 19, 2009) (awarded fees of 28% of $33 million recovery, plus expenses);

70. *Olmsted v. ADAC Laboratories*, Case No. CV793923 (Santa Clara Super. Ct. May 10, 2004) (awarded fees of 28% of $3.55 million recovery, plus expenses);

71. *Alaska Elec. Pension Fund v. Pharmacia Corp.*, No. 03-1519(AET) (D.N.J. Jan. 30, 2013) (awarded fees of 27.5% of $164 million recovery, plus expenses);

72. *Silverman v. Motorola, Inc.*, No. 07 C 4507 (N.D. Ill. May 7, 2012) (awarded fees of 27.5% of $200 million recovery, plus expenses);

73. *Cornwell v. Credit Suisse Group*, No. 08-cv-03758(VM) (S.D.N.Y. July 20, 2011) (awarded fees of 27.5% of $70 million recovery, plus expenses);

74. *Ross v. Abercrombie & Fitch Co.*, No. 2:05-cv-00819-EAS-TPK (S.D. Ohio Sept. 24, 2010) (awarded fees of 27.5% of $12 million recovery, plus expenses);

75. *Brown v. Brewer, et al.*, No. 2:06-cv-03731-GHK-SH (C.D. Cal. Mar. 19, 2012) (awarded fees of 27% of $45 million recovery, plus expenses);

76. *Hoff v. Popular Inc.*, No. 3:09-cv-01428-GAG (D.P.R. Nov. 2, 2011) (awarded fees of 27% of $37.5 million recovery, plus expenses);

77. *In re Infineon Techs. AG Sec. Litig.*, No. C-04-4156-JW (N.D. Cal. Nov. 2, 2011) (awarded fees of 27% of $6.2 million recovery, plus expenses);

78. *Thurber v. Mattel, Inc.*, No. CV-99-10368-MRP(CWx) (C.D. Cal. Oct. 1, 2003) (fee equal to 27% of $122 million recovery, plus expenses);

79. *Massachusetts Bricklayers & Masons Trust Funds v. Deutsche Alt-A Sec., Inc.*, No. 2:08-cv-03178-LDW-ARL (E.D.N.Y. July 11, 2012) (awarded 26.5% of $32.5 million recovery, plus expenses);

80. *In re CIT Grp. Inc. Sec. Litig.*, No. 1:08-cv-06613-BSJ-THK (S.D.N.Y. June 13, 2012) (awarded 26.5% of $75 million recovery, plus expenses);

81. *Plumbers & Pipefitters Local Union No. 630 Pension-Annuity Trust Fund v. Northwest Pipe Co.*, No. 3:09-cv-05724-RBL (W.D. Wash. Mar. 22, 2013) (awarded fees of 25% of $12.5 million recovery, plus expenses);

82. *Int'l Bhd. of Elec. Workers Local 697 Pension Fund v. Int'l Game Tech.*, No. 3:09-cv-00419-MMD-WGC (D. Nev. Oct. 19, 2012) (awarded fees of 25% of $12.5 million recovery, plus expenses);

83. *Plumbers & Pipefitters Local Union No. 630 Pension-Annuity Trust Fund v. Allscripts-Misys Healthcare Solutions, Inc.*, No. 1:09-cv-04726 (N.D. Ill. July 12, 2012) (awarded 25% of $10.15 million recovery, plus expenses);

84. *Maiman v. Talbott*, No. SACV 09-0012-AG(ANx) (C.D. Cal. July 9, 2012) (awarded 25% of $8.25 million recovery, plus expenses);

85. *In re Accuray Inc. Sec. Litig.*, No. 4:09-cv-03362-CW (N.D. Cal. Dec. 8, 2011) (awarded fees of 25% of $13.5 million recovery, plus expenses);

86. *In re Agria Corp. Sec. Litig.*, No. 1:08-cv-03536-WHP (S.D.N.Y. June 7, 2011) (awarded fees of 25% of $3.75 million recovery, plus expenses);

87. *City of Roseville Emp. Ret. Sys. v. Micron Tech., Inc.*, No. 06-CV-85-WFD (D. Idaho Apr. 28, 2011) (awarded fees of 25% of $42 million recovery, plus expenses);

88. *The City of Hialeah Employees' Ret. Sys. v. Toll Bros., Inc.*, No. 07-1513 (E.D. Pa. Mar. 4, 2011) (awarded fees of 25% of $25 million recovery, plus expenses);

89. *In re America Service Group, et al.*, No. 3:06-cv-00323 (M.D. Tenn. Oct. 15, 2010) (awarded fees of 25% of recovery (worth $14,895,000 in cash and stock), plus expenses);

6

90.    *Belodoff v. Netlist, Inc.*, No. SACV-07-00677-DOC(MLGx) (C.D. Cal. Sept. 30, 2010) (awarded fees of 25% of $2.6 million recovery, plus expenses);

91.    *Charatz v. Avaya, Inc.*, No. 3:05-cv-02319 (D.N.J. Sept. 27, 2010) (awarded fees of 25% of $4.5 million recovery, plus expenses);

92.    *Lefkoe v. Jos. A. Bank Clothiers, Inc.*, No. 1:06-cv-01892-WMN (D. Md. July 28, 2010) (awarded 25% of $4 million recovery, plus expenses);

93.    *Ryan v. Flowserve Corp.*, No. 3:03-CV-01769-B (N.D. Tex. May 11, 2010) (awarded 25% of $55 million recovery, plus expenses);

94.    *Twinde v. Threshold Pharms., Inc.*, No. 4:07-cv-04972-CW (N.D. Cal. Apr. 16, 2010) (awarded 25% of $10 million recovery, plus expenses);

95.    *City of Westland Police and Fire Retirement System v. Sonic Solutions*, No. C 07-05111-CW (N.D. Cal. Apr. 8, 2010) (awarded 25% of $5 million recovery, plus expenses);

96.    *Batwin v. Occam Networks, Inc.*, No. 2:07-cv-02750-CAS(SHx) (C.D. Cal. Feb. 22, 2010) (awarded 25% of $13.945 million recovery, plus expenses);

97.    *Tsirekidze v. Syntax-Brillian Corp.*, No. 2:07-cv-02204-FJM (D. Ariz. Feb. 18, 2010) (awarded 25% of $10 million recovery, plus expenses);

98.    *In re Metawave Commc'ns Sec. Litig.*, No. 02-cv-00625-RSM (W.D. Wash. Feb. 11, 2010) (awarded 25% of $1.5 million recovery, plus expenses);

99.    *In re 21st Century Holding Co. Sec. Litig.*, No. 07-61057-Civ-COHN/SELTZER (S.D. Fla. Jan. 29, 2010) (awarded 25% of $2.24 million recovery, plus expenses);

100.    *West Palm Beach Firefighters' Pension Fund v. StarTek, Inc.*, No. 05-cv-01265-WDM-MEH (D. Colo. Dec. 21, 2009) (awarded 25% of $7.5 million recovery, plus expenses);

101.    *In re Dura Pharms., Inc. Sec. Litig.*, No. 99-CV-0151-JLS(WMC) (S.D. Cal. Dec. 4, 2009) (awarded fees of 25% of $14 million recovery, plus expenses);

102.    *In re Seracare Life Sciences, Inc. Sec. Litig.*, No. 05-CV-2335-JLS(CAB) (S.D. Cal. July 17, 2009) (awarded 25% of $1.6 million recovery, plus expenses);

103.    *In re Ace Ltd. Sec. Litig.*, No. 05-md-1675 (E.D. Pa. June 10, 2009) (awarded 25% of $1.95 million recovery, plus expenses);

104.    *Darquea v. Jarden Corp.*, No. 1:06-cv-00722(RPP) (S.D.N.Y. May 18, 2009) (awarded 25% of $8 million recovery, plus expenses);

105.    *In re Impax Labs., Inc. Sec. Litig.*, No. C-04-4802-JW (N.D. Cal. May 12, 2009) (awarded 25% of $9 million recovery, plus expenses);

106. *Parkside Capital Ltd. v. Xerium Techs. Inc.*, No. 06-10991-RWZ (D. Mass. Feb. 26, 2009) (awarded 25% of $3.6 million recovery, plus expenses);

107. *In re Sunterra Corp. Sec. Litig.*, No. 2:06-cv-00844-BES-RJJ (D. Nev. Feb. 10, 2009) (awarded 25% of $8 million recovery, plus expenses);

108. *In re Brocade Sec. Litig.*, No. C 05-02042 CRB (N.D. Cal. Jan. 26, 2009) (awarded 25% of the recovery, plus expenses);

109. *In re Bridgestone Sec. Litig.*, No. 3:01-0017 (M.D. Tenn. Jan. 23, 2009) (awarded 25% of $30 million recovery, plus expenses);

110. *In re Wireless Facilities, Inc. Sec. Litig.*, No. 04cv1589 NLS (S.D. Cal. Jan. 13, 2009) (awarded 25% of $12 million recovery, plus expenses);

111. *In re Wireless Facilities, Inc,. Sec. Litig.*, No. 07cv482 NLS (S.D. Cal. Dec. 19, 2008) (awarded 25% of $4.5 million recovery, plus expenses);

112. *In re Tommy Hilfiger Sec. Litig.*, No. 1:04-CV-07678-SAS (S.D.N.Y. Oct. 8, 2008) (awarded 25% of $16 million recovery, plus expenses);

113. *In re PETCO Corp. Sec. Litig.*, No. 05-CV-0823 H(RBB) (S.D. Cal. Sept. 2, 2008) (awarded 25% of $20.25 million recovery, plus expenses);

114. *In re DHB Indus., Inc. Class Action Litig.*, No. 2:05-cv-04296-JS-ETB (E.D.N.Y. July 21, 2008) (awarded 25% of recovery, plus expenses);

115. *In re Zale Corporation Sec. Litig.*, No. 3:06-cv-01470-N (N.D. Tex. July 10, 2008) (awarded 25% of $5.9 million recovery, plus expenses);

116. *Reynolds v. Repsol YPF, S.A.*, No. 1:06-cv-00733-DAB (S.D.N.Y. May 7, 2008) (awarded 25% of $8 million recovery, plus expenses);

117. *Sekuk Global Enters. v. KVH Indus., Inc.*, No. CA-04-306L (D.R.I. Jan. 25, 2008) (fee equal to 25% of $5 million recovery, plus expenses);

118. *In re SeraCare Life Sciences, Inc. Sec. Litig.*, No. 05-CV-2335-H(CAB) (S.D. Cal. Sept. 4, 2007) (awarding 25% of $3 million recovery, plus expenses);

119. *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. M-02-1486 PJH (N.D. Cal. Aug. 16, 2007) (fee equal to 25% of recovery, plus expenses);

120. *In re Watchguard Sec. Litig.*, No. 2:05-cv-00678-JLR (W.D. Wash. Aug. 6, 2007) (awarded 25% of $1.75 million recovery, plus expenses);

121. *In re Alliance Gaming Corp. Sec. Litig.*, No. CV-S-04-0821-BES-PAL (D. Nev. June 28, 2007) (awarding 25% of $15.5 million recovery, plus expenses);

122.   *Dutton v. D&K Healthcare Res., Inc.*, No. 4:04-CV-00147-SNL (E.D. Mo. June 5, 2007) (awarding 25% of $18.7 million recovery, plus expenses);

123.   *In re Vicuron Pharms., Inc. Sec. Litig.*, No. 04-2627 (E.D. Pa. May 31, 2007) (awarded 25% of $12.75 million recovery, plus expenses);

124.   *In re Verisign, Inc. Sec. Litig.*, No. C-02-2270-JW(PVT) (N.D. Cal. Apr. 24, 2007) (awarded 25% of $80 million recovery, plus expenses);

125.   *In re Amerada Hess Corp. Sec. Litig.*, No. 2:02cv03359 (D.N.J. Apr. 16, 2007) (awarded 25% of $9 million recovery, plus expenses);

126.   *Heller v. Quovadx, Inc.*, No. 04-cv-00665 (D. Colo. Apr. 13, 2007) (awarded 25% of $9 million recovery, plus expenses);

127.   *In re Charlotte Russe Holding, Inc. Sec. Litig.*, No. 04cv2528 (S.D. Cal. Aug. 30, 2006) (awarded 25% of $3.9 million recovery, plus expenses);

128.   *In re Surebeam Corp. Sec. Litig.*, No. 03-CV-01721-JM(POR) (S.D. Cal. July 17, 2006) (awarded 25% of $32.75 million recovery, plus expenses);

129.   *In re U.S. Aggregates, Inc. Sec. Litig.*, No. C-01-1688-CW (N.D. Cal. Apr. 6, 2006) (awarding 25% of $3.5 million recovery, plus expenses);

130.   *In re Titan, Inc. Sec. Litig.*, Master File No. 04-CV-0676-LAB(NLS) (S.D. Cal. Dec. 19, 2005) (fee award equal to 25% of $61.5 million recovery, plus expenses);

131.   *In re Intershop Communications AG Sec. Litig.*, Master File No. C-01-20333-JW (N.D. Cal. Dec. 5, 2005) (fee award equal to 25% of $2 million recovery, plus expenses);

132.   *In re Amazon.Com, Inc. Sec. Litig.*, Master File No. C-01-0358-L (W.D. Wash. Nov. 11, 2005) (fee award equal to 25% of $27.7 million recovery, plus expenses);

133.   *In re CVS Corp. Sec. Litig.*, No. C.A. 01-11464(JLT) (D. Mass. Sept. 7, 2005) (fee equal to 25% of recovery, plus expenses);

134.   *In re Intermune, Inc. Sec. Litig.*, No. C-03-2954-SI (N.D. Cal. Aug. 26, 2005) (fee award equal to 25% of $10.4 million recovery; plus expenses);

135.   *In re Pemstar, Inc. Sec. Litig.*, Master File No. 02-1821 (DWF/SRN) (D. Minn. May 27, 2005) (fee award equal to 25% of $12 million recovery, plus expenses);

136.   *In re Ventro Corp. Sec. Litig.*, No. C-01-1287-SBA (N.D. Cal. Mar. 29, 2005) (fee award equal to 25% of $6.935 million recovery; plus expenses);

137.   *In re Specialty Laboratories, Inc. Sec. Litig.*, Master File No. CV 02-04352-DDP(RCx) (C.D. Cal. Dec. 28, 2004) (fee award equal to 25% of $12 million recovery, plus expenses);

9

138. *Brody v. TALX Corporation, et al.*, No. 4:01CV2014-HEA (E.D. Mo. Oct. 6, 2004) (fee equal to 25% of $5.75 million recovery, plus expenses);

139. *In re National Golf Properties, Inc. Sec. Litig.*, Master File No. 02-1383-GHK(RZx) (C.D. Cal. Oct. 4, 2004) (fee award equal to 25% of $4.175 million recovery, plus expenses);

140. *In re Infonet Services Corp. Sec. Litig.*, Master File No. CV-01-10456-NM(CWx) (C.D. Cal. July 26, 2004) (fee equal to 25% of $18 million recovery, plus expenses);

141. *In re Mutual Risk Management Ltd. Sec. Litig.*, Case No. 02CV1110K(POR) (S.D. Cal. July 22, 2004) (fee equal to 25% of $3 million recovery, plus expenses);

142. *In re Accelerated Networks, Inc. Sec. Litig.*, Master File No. CV-01-3585-SJO(MANx) (C.D. Cal. June 28, 2004) (fee equal to 25% of $8 million recovery, plus expenses);

143. *In re DJ Orthopedics, Inc. Sec. Litig.*, Case No. 01-CV-2238-K(RBB) (S.D. Cal. June 21, 2004) (fee equal to 25% of $5.5 million fund, plus expenses);

144. *In re TUT Systems, Inc. Sec. Litig.*, Master File No. C-01-2659-CW (N.D. Cal. May 14, 2004) (fee equal to 25% of $10 million recovery, plus expenses);

145. *In re M&A West, Inc. Sec. Litig.*, Master File No. C-01-0033-SBA (N.D. Cal. Feb. 10, 2004) (fee equal to 25% of $2.615 million recovery, plus expenses).

S:\FORMS\Fees\25% and 30% Fee Charts to Use as Exhibits\2004 to Present F-Exp 25% lst with settlement amounts.docx
Revised July 25, 2013

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 19, 2014, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on February 19, 2014.

s/ Debra J. Wyman
DEBRA J. WYMAN

ROBBINS GELLER RUDMAN
& DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-3301
Telephone:  619/231-1058
619/231-7423 (fax)

E-mail:  DebraW@rgrdlaw.com

916290_1

## Mailing Information for a Case  1:10-cv-01461-BYP Louisiana Municipal Police Employees Retirement System v. KPMG LLP et al

### Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Rajeev K. Adlakha**
  rkadlakha@vorys.com,smromanin@vorys.com

- **Jeffrey D. Baltruzak**
  jbaltruzak@mwe.com

- **Jonathan R. Barr**
  jbarr@bakerlaw.com

- **Fritz E. Berckmueller**
  fberckmueller@calfee.com,mkucharson@calfee.com,ezell@calfee.com

- **Terry M. Brennan**
  tbrennan@bakerlaw.com,kwangsgard@bakerlaw.com,fharker@bakerlaw.com,gcurbelo@bakerlaw.com,bhlitdocket@bakerlaw.com

- **John J. Carney**
  jcarney@bakerlaw.com

- **Susannah R. Conn**
  sconn@rgrdlaw.com

- **Virginia A. Davidson**
  vdavidson@calfee.com

- **Francesca M. Harker**
  fharker@bakerlaw.com

- **Geoffrey M. Johnson**
  gjohnson@scott-scott.com,jguglielmo@scott-scott.com,tcrockett@scott-scott.com,dbroggi@scott-scott.com,efile@scott-scott.com

- **Jack Landskroner**
  jack@lgmlegal.com,debra@lgmlegal.com

- **Jeffrey J. Lauderdale**
  jlauderdale@calfee.com,dmichalski@calfee.com

- **Jeffrey D. Light**
  jeffl@rgrdlaw.com,jstark@rgrdlaw.com

- **Kristin S.M. Morrison**
  kmorrison@jonesday.com,hjhockenberry@jonesday.com

- **Adrienne F. Mueller**
  afmueller@jonesday.com,nmadamczyk@jonesday.com

- **Danielle S. Myers**
  dmyers@rgrdlaw.com

- **John M. Newman , Jr**
  jmnewman@jonesday.com,nmadamczyk@jonesday.com,pgarver@jonesday.com

- **John D. Parker**
  jparker@bakerlaw.com,lreece@bakerlaw.com

- **Geoffrey J. Ritts**
  gjritts@jonesday.com,nmadamczyk@jonesday.com

- **Darren J. Robbins**
  e_file_sd@rgrdlaw.com

- **Jeffrey A. Rossman**
  jrossman@mwe.com,deberry@mwe.com

- **Steven S. Scholes**
  sscholes@mwe.com

- **William P. Schuman**
  wschuman@mwe.com,bolvera@mwe.com

- **David J. Tocco**
  djtocco@vorys.com,kshowe@vorys.com

- **Michael N. Ungar**
  mungar@ulmer.com,mcrick@ulmer.com

- **Daniel R. Warren**
  dwarren@bakerlaw.com

- **Robert N. Webner**
  rnwebner@vorys.com

- **Debra J. Wyman**
  debraw@rgrdlaw.com,stremblay@rgrdlaw.com

- **Melissa L. Zujkowski**
  mzujkowski@ulmer.com,rbrumfield@ulmer.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
Phillip          A. Brown
Vorys, Sater, Seymour & Pease - Columbus
52 East Gay Street
P.O. Box 1008
Columbus, OH 43216-1008

Kathryn          E. Schill
INVALID ADDRESS - Baker & Hostetler - Cleveland
3200 PNC Center
1900 East Ninth Street
Cleveland, OH 44114
```